**Revised August 29, 2001**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 99-30973

_____

LARRY D CROWE; ET AL,

                                        Plaintiffs,

versus

JAMES W SMITH; ET AL,

                                        Defendants,

W GLENN BURNS; WILLIAM WRIGHT;
ROBERT B BIECK, JR,

                                        Appellants.

Appeals from the United States District Court
for the Western District of Louisiana

August 27, 2001

Before EMILIO M. GARZA, and PARKER, Circuit Judges, and ELLISON[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

_____

[*]     District Judge of the Southern District of Texas, sitting by designation.

W. Glenn Burns, William E. Wright, and Robert B. Bieck, Jr., all members of the Louisiana bar, appeal the imposition of sanctions against them by Judge Nauman S. Scott of the U.S. District Court for the Western District of Louisiana. The district court originally sanctioned the attorneys to three months' suspension from practice in the Western District of Louisiana, as part of a broader imposition of fines, reprimands, and suspensions against a group of attorneys and insurance companies involved in the settlement of an underlying civil RICO action (collectively, the "sanctions defendants"). These sanctions were the subject of the first appeal of this case, *Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998) ("*Crowe Sanctions I*"), in which we, *inter alia*, remanded for further consideration with respect to defendants Burns, Wright, and Bieck. On remand, the district court reimposed the three-month suspension from practice against Burns, Wright, and Bieck, and further ordered payment *in solido* of costs and attorney's fees potentially totaling over $300,000.

The full facts and procedural history of this case, as described in *Crowe Sanctions I*, 151 F.3d at 221-26, are complicated. The issues on this appeal are much narrower: (1) whether the district court exceeded our mandate by reexamining issues resolved in *Crowe Sanctions I*; and (2) whether the district court's finding of bad faith conduct by Burns, Wright, and Bieck is supported by clear and convincing evidence. As to the first issue, we hold that the district court did exceed our mandate by revisiting issues decided by necessary implication in *Crowe Sanctions I*, and we disregard the district court's renewed findings on these matters. The second issue, whether Burns, Wright, and Bieck acted in bad faith, hinges on a singular factual question: whether the settlement meeting in which their alleged misrepresentation occurred was a global settlement meeting, to include defendants other than the clients of Burns, Wright, and Bieck. We hold that the record lacks clear and convincing evidence that this was the purpose of the meeting, such that the district court abused its discretion by finding

-2-

bad faith conduct. The sanctions against Burns, Wright, and Bieck are therefore reversed.

# I

Burns, Wright, and Bieck served as defense attorneys for various outside attorneys of a defunct savings and loan association in a civil RICO suit. As the trial approached, Burns, Wright, and Bieck attempted unsuccessfully to negotiate individual settlements for their clients. On the eve of the trial, July 11, 1994, Burns, Wright, and Bieck met together with plaintiffs' counsel Joseph R. Ward, Jr., who suggested settlement for $6.2 million. Burns responded, with Bieck and Wright present, that this figure was far beyond any theory of insurance coverage. Days later, the attorneys agreed orally to settle for $2.25 million, and Burns read the oral settlement agreement into the record. Bieck then prepared the written settlement agreement, which included reference to the participation of "American Casualty Co." as a settling defendant.

American Casualty Company is one of a group of insurance companies, referred to collectively as CNA, which had issued an expired directors' and officers' errors and omissions policy (the "D&O policy") to the directors of the savings and loan.[1] The policy was a "claims made" policy, and carried a general liability limit of $5 million. Plaintiffs' counsel Ward did not learn of the existence of the D&O policy until the conclusion of the civil RICO trial, after most of the defendants had entered into the $2.25 million global settlement agreement. The existence of the D&O policy was significant because Ward had received negative responses to his discovery requests relating to the possibility of indemnity agreements,[2] and had assumed that the savings and loan directors were

---

[1]     CNA was never made a party to the RICO suit, and its contact with the plaintiffs for the purpose of settlement negotiations was through its attorneys, Michael Tone and Anne Fiedler.

[2]     In 1994 when this litigation occurred, the Western District of Louisiana had opted out of the automatic disclosure provisions of Fed.R.Civ.P. 26(a)(1)(D).

uninsured.

Ward notified the district court of his discovery, and the court entered its own sanctions motion pursuant to its inherent power. The court held that Burns, Wright, and Bieck, along with the other sanctions defendants had willfully conspired to defraud the Crowes by concealing the D&O policy despite having discovery-related, ethical, and other duties to reveal it. Based on this finding, the court ordered, *inter alia*, that Burns, Wright, and Bieck be suspended from practice before the Western District for a period of three months.

All of the sanctions defendants appealed the district court's judgment to this court. As to Burns, Wright, and Bieck, we found the suspensions to be quasi-criminal in nature, and held that there was no procedural flaw in the district court's sanctions. We rejected the district court's finding of bad faith, however, reasoning that "there was no proper foundation for a finding that these defendants breached a known duty to disclose, as the district court made no finding that these defendants ever made or assisted a false discovery request." *Crowe Sanctions I*, 151 F.3d at 238. We remanded to the district court for consideration of whether there was a "more supportable finding of other conduct that would constitute bad faith," i.e., Burns' statement at the July 11 meeting that $6.2 million was far beyond any theory of insurance coverage.[3] *Id.* at 239-40. We stated:

> In reaching its decision, the district court should address specifically the manner in which the actions of Burns, and, more importantly, Bieck and Wright, can be equated to a misrepresentation for purposes of the Louisiana Rules. In doing so, the court should pay particular attention to our command in [*In the matter of Richard A.*] *Thalheim* [853 F.2d 383 (5th Cir. 1988)] that such rules are to be read strictly, resolving all ambiguities in favor of the attorney.

*Id.* at 241 n.40.

---

[3]    The $5 million D&O policy, if combined with the outside attorneys' errors and omissions policies, would exceed $6.2 million in coverage.

On remand, the district court found breaches of the following duties: honesty and fair dealing to opposing counsel (Louisiana Professional Conduct Rules 3.4, 4.1, and 8.4), and candor to the tribunal (Rules 3.3, 8.3, and 8.4). The court held that the three attorneys breached the duty of honesty and fair dealing to opposing counsel based on the July 11 meeting with plaintiffs' counsel Ward. The court found that Burns made a false statement of material fact to Ward concerning the potential availability of $5 million in insurance coverage when Burns indicated that the $6.2 million figure suggested by Ward was beyond any theory of insurance coverage. The court also held that Wright and Bieck violated this same duty by maintaining silence in the face of Burns' false statement.

Second, the court found a breach of the duty of candor to the tribunal based on the three attorneys' placement of the oral settlement agreement into the record. The court held that the attorneys knew that the plaintiffs were unaware of material facts to the settlement—"that a $5 million D&O policy existed and that American Casualty Company was a party to the settlement." The court found that Burns "specifically made a statement calculated to mislead the court and plaintiffs' counsel into accepting a settlement and issuing appropriate dismissals when, in fact, the plaintiffs had not negotiated with American Casualty." Once again, the court also found a breach by Bieck and Wright in their silence in the face of Burns' misrepresentation.

Finally, the court found a breach of the duty of candor to the tribunal in the attorneys' preparation of the written settlement agreement. The court held that Bieck drafted the document "in such a way as to purposefully deceive this court and the plaintiffs and to misrepresent the fact that CNA provided coverage to the directors and officers of [the savings and loan]." The court ruled that Burns and Wright "acquiesced in the activity of Bieck and used the same means to obtain a dismissal of their respective clients."

Based on these findings, the court reimposed the three-month suspension on Burns, Wright, and Bieck. In addition, the court held the attorneys liable *in solido* for all the costs of "these proceedings" and ordered them to pay Ward "the reasonable attorney fees and expenses incurred in the investigation and prosecution of this sanction proceeding." The three attorneys appeal, arguing that (1) the court exceeded our mandate in *Crowe Sanctions I* by considering the attorneys' conduct in the preparation of the written settlement agreement and the entry of the oral agreement into the record; (2) the record does not support the district court's finding that the attorneys' conduct at the July 11 meeting violated the Louisiana Rules of Professional Conduct; and (3) the monetary sanctions imposed violate the *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) principle of judicial vindictiveness.

## II

The mandate rule provides that a district court on remand must "'implement both the letter and spirit of the [appellate court's] mandate,' and may not disregard the 'explicit directives' of that court." *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998) (quoting *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1370 (5th Cir. 1992)). Where, as here, further proceedings in the district court "'are specified in the mandate [of the Court of Appeals], the district court is limited to holding such as are directed.'" *Harris v. Sentry Title Co.*, 806 F.2d 1278, 1279 (5th Cir. 1987) (quoting 1B Moore's Federal Practice ¶0.404(10), at 172 (1984)); *see also United States v. Castillo*, 179 F.3d 321, 330 (5th Cir. 1999), *rev'd on other grounds*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) ("The mandate rule requires a district court on remand to effect our mandate and to do nothing else.").

The mandate rule is considered a corollary to the law of the case doctrine, which prevents a

district court on remand from revisiting an issue of law or fact decided on appeal. *See Castillo*, 179 F.3d at 326 ("When we resolve a legal issue and remand to the district court, our decision binds subsequent proceedings in the district court and on later appeal."); *City Pub. Serv. Bd. v. Gen. Elec. Co.*, 935 F.2d 78, 82 (5th Cir. 1991) ("[I]ssues decided by an appellate court cannot be reexamined by the district court on remand."). The law of the case proscription applies regardless of whether the issue was decided explicitly or by necessary implication. *See Fed. Deposit Ins. Corp. v. McFarland*, 243 F.3d 876, 883 (5th Cir. 2001).

In its first sanctions opinion, the district court held that Burns, Wright, and Bieck violated their ethical obligations by reciting the oral settlement agreement into the record and by preparing the written settlement agreement. The court found that Burns' recitation of the oral settlement agreement into the record was "purposefully vague and broad," and that Wright and Bieck were complicit in the deception because they failed to alert the court to CNA's participation. As to the written settlement agreement, the court found that Bieck "deliberately buried the names of the American Casualty Company in the settlement document and in a manner that induced plaintiffs and their attorneys to overlook it and thus achieve a fraudulent release." The court again held Wright and Burns accountable for their silence in the face of the misrepresentation.

On appeal in *Crowe Sanctions I*, we held that the district court erred in imposing sanctions against Burns, Wright, and Bieck based on the attorneys' failure to disclose the existence of the D&O policy. We remanded for a determination of whether Burns' July 11 statement that $6.2 million was beyond any theory of insurance coverage was an affirmative misrepresentation, and whether Bieck and Wright were complicit in this misrepresentation through their silence. In so holding, we rejected by necessary implication the district court's finding that Burns, Wright, and Bieck engaged in

sanctionable conduct in their recitation of the oral settlement agreement into the record and preparation of the written settlement agreement. *See McFarland*, 243 F.3d at 883 (law of the case doctrine applies to issues decided by necessary implication). We stated, "[t]he record . . . indicates . . . that there was a supportable finding of other conduct that would constitute bad faith, in the form of the misrepresentation offered at the July 11 meeting." 151 F.3d at 239.

*Crowe Sanctions I* does not explicitly prohibit the district court from considering other potential misrepresentations on remand. With regard to the oral and written settlement agreements, however, the district court in its original opinion had already held that the attorneys' conduct was sanctionable. This holding was necessarily rejected when we vacated and reversed the original imposition of sanctions, finding no basis on which to affirm the district court's exercise of the inherent sanctions power. The district court was not then free on remand to reimpose sanctions on these same grounds. *See Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir. Unit A May 1981) ("Even if the prior appellate decision did not explicitly discuss the issues, nevertheless the law of the case operates to preclude their reconsideration on remand if the appellate decree necessarily or implicitly resolved them adversely to the party now seeking to reurge them."). Accordingly, the district court exceeded our mandate by revisiting these issues, and we disregard its renewed findings relating to the recitation of the oral settlement agreement into the record and the preparation of the written settlement agreement.

### III

If we are to affirm the sanctions imposed by the district court, then, it must be because Burns' statement at the July 11 settlement conference was an affirmative misrepresentation, joined tacitly by Bieck and Wright. A district court has inherent power to sanction attorneys for bad faith conduct in

litigation, see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); we review the exercise of this power for abuse of discretion. *See Crowe Sanctions I*, 151 F.3d at 226; *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir. 1995). A court abuses its discretion when its finding of bad faith is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995); *Kipps v. Caillier*, 197 F.3d 765, 770 (5th Cir. 1999). In attorney suspension and disbarment cases, the finding of bad faith must be supported by clear and convincing proof. *See Thalheim*, 853 F.2d at 389 n.9. Clear and convincing proof is a high standard, requiring more than a preponderance of the evidence. *See In re: Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). To support a finding of bad faith, the evidence must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case. *See id*.

On remand, the district court found that Burns made a false statement of material fact to plaintiffs' counsel by indicating that the $6.2 million settlement offer was beyond any theory of insurance coverage. The court held that Wright and Bieck approved of Burn's statement through their silence. Accordingly, the court held that the attorneys violated Louisiana Professional Rules of Conduct 4.1[4] and 8.4(c).[5]

Burns, Bieck and Wright dispute these findings, arguing that there is no evidence to support the district court's determination that the statement was made in bad faith. Specifically, they allege that Burns' statement was made in reference to the level of *attorney* insurance coverage available and,

---

[4]     Rule 4.1 provides in pertinent part that "[i]n the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person."

[5]     Rule 8.4 provides in pertinent part that "[i]t is unprofessional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

in that light, the statement was accurate. They contend that at the time of the meeting, they were unaware of the amount of the D&O policy, and that, regardless, there was no possibility that their clients would be covered by the D&O policy as the policy applied to *directors and officers* of the savings and loan only.

The district court made the following factual findings in support of its conclusion that the attorneys acted in bad faith at the meeting: (1) on July 8 Wright learned of the existence of the D&O policy; (2) on July 8 Wright learned that CNA might give authority to participate in a global settlement; (3) before the July 11 meeting, all three attorneys knew about the existence of the D&O policy and knew that it was in the amount of $5 million; (4) on July 11 just before the meeting, all three attorneys discussed the possibility of a global settlement to include CNA; (5) just prior to the meeting, Wright reminded Burns and Bieck that CNA asked that its possible participation be kept confidential; (6) at the meeting, all three attorneys knew that plaintiffs' counsel Ward was assuming that the only insurance policies in existence were the attorney policies; (7) when Burns made the statement about the $6.2 million settlement offer, plaintiffs' counsel naturally presumed that Burns directed his comment only against these attorney policies.

The record supports each of these factual findings. Wright testified that as early as June 30, he knew that the CNA policy limit was $5 million, and that on July 8, he participated in a conference call with CNA's attorney regarding CNA's possible participation in a global settlement. Wright, Bieck, and Burns each testified that they had a discussion prior to the July 11 meeting regarding CNA's request that its possible participation be kept confidential. Bieck testified that Wright recounted for Bieck and Burns what had been discussed in the CNA conference call. Although disputed by the testimony of Burns, the district court could infer from this testimony that at the time

-10-

of the meeting, all three attorneys knew about the existence of the policy and about the amount of coverage. *See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co.*, 197 F.3d 742, 745-46 (5th Cir. 2000) (clear error standard of review applies to both the district court's underlying fact findings and to inferences deduced therefrom).

These facts notwithstanding, Burns' statement regarding insurance coverage could be false—and consequently the basis for a finding of bad faith conduct—only if the purpose of the July 11 meeting with plaintiffs' counsel was to reach a global settlement to include the *directors* of savings and loan, in addition to the clients of Burns, Wright, and Bieck. The district court, however, made no such finding. Consequently, the sole remaining question in this appeal is whether the record could support a finding by clear and convincing proof that the July 11 meeting was a global settlement conference. If so, we must remand to the district court to enter such a finding at its discretion. If not, we must reverse the imposition of sanctions. *See Thalheim*, 853 F.2d at 389 n.9 ("In attorney suspension and disbarment cases, the charges must be sustained by clear and convincing proof.").

We have adopted the following definition of "clear and convincing" for attorney suspension and disbarment cases:

> ['Clear and convincing' is] that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case.

*In re: Medrano*, 956 F.2d at 102 (quoting *Cruzan by Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d. 224 (1990)). Here, Burns testified directly that his statement was made in reference to the amount of available *attorney* insurance coverage, and both

Wright and plaintiffs' counsel Ward confirmed that this was their interpretation of Burns' statement.[6]

Indeed, Ward characterized the meeting as follows:

> So when we got in there and I brought up coverage, Glenn [Burns] apparently . . . said, Joe [Ward], your demand is outside all possible coverage. Glenn maintains he's now talking about the errors and omissions [attorneys'] coverage, which is all I thought. And it was, because I had because I had broken it down $4 million for Smith and $2 million for the attorneys. And Glenn is saying, well, $6 million, Joe, we might as well go home. . . . I don't believe Glenn Burns and I – I don't believe he mislead me at all about that. We were very open. Mr. Bieck actually said, well, my client doesn't want me to talk about coverage, but this is my two cents. And he was open about the errors and omissions coverage.

The circumstances of the July 11 meeting and the settlement negotiations that followed are further evidence that the purpose of the meeting was not to reach a global settlement to include the savings and loan directors. First, it is undisputed that neither CNA's attorney nor the directors' attorney was present at meeting; the only participants were plaintiffs' counsel and Burns, Wright, and Bieck. Second, it is also undisputed that neither CNA nor the directors had given settlement authority to Burns, Wright, or Bieck. Wright testified specifically that the settlement offer ultimately made by the three attorneys that night did not include any money from CNA, and that there was no discussion that night about settling the claims against the directors. Third, the testimony indicates that settlement negotiations with the savings and loan directors did not begin until the second week of trial, around July 20, after the directors had testified. In response to a question about when the directors were included in settlement talks, Ward stated that "the plaintiffs became very concerned that the directors were such horrible witnesses that the jury might hit them and let everyone else off, Smith in particular." The directors' attorney testified that Burns asked him for a contribution to the global settlement on July 20, and Burns confirmed that it was on this date that the directors were

---

[6] Bieck was not questioned about the July 11 meeting at the sanctions hearing.

included in the global settlement discussions. Burns also testified that it was on July 21 that CNA finally agreed to contribute to the settlement.

There is some testimony in the record to the contrary. John McDowell, also plaintiffs' counsel and also present at the July 11 meeting, testified that "when Joe and I made the large settlement demand in the hotel room, our demand and our intent was trying to settle the whole case. And we talked about our settlement demand as a demand to settle the whole case." Burns himself testified that "[w]e were entering into settlement discussions the night before trial without discussing it with the directors or their lawyers, and we were going to settle them out because we were under the impression that they had no insurance coverage and certainly had no problem with getting let out of a lawsuit on money paid by someone else."

In light of the contradictory testimony and circumstances described above, however, we do not find this testimony to be clear and convincing evidence—evidence so "clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts"—of the mendacity of Burns' statement. *In re: Medrano*, 956 F.2d at 102; *cf. Sealed Appellant v. Sealed Appellee*, 211 F.3d 252, 255 (5th Cir. 2000) (finding clear and convincing evidence that the sanctioned attorney paid an insider witness where the attorney admitted to the payment and testified that he considered it to be "a loan, but it is not a loan."); *In re Sealed Appellant*, 194 F.3d 666, 670 (5th Cir. 1999) (finding clear and convincing evidence that the sanctioned attorney's conduct in backdating the endorsement of a stock certificate "was a material misrepresentation and that his 'refreshed' memory was the product of being confronted by the ink analysis").

Burns' and McDowell's testimony is certainly some evidence that the purpose of the July 11

meeting was to reach a global settlement that included the directors. But as described above, the record also contains Wright's testimony directly to the contrary; Ward's testimony that he was not misled by Burns' statement; testimony that CNA's and the directors' counsel was not present at the July 11 meeting; testimony that at the time of the meeting Burns, Wright, and Bieck lacked settlement authority from either CNA or the directors; and testimony that global settlement negotiations that included the directors began on July 20. Viewing the record as a whole, therefore, we are not left with a "firm belief or conviction as to the truth of the allegation[]" that the July 11 meeting was a global settlement conference. *In re: Medrano*, 956 F.2d at 102. Consequently, there is no basis for a finding by clear and convincing proof that Burns' statement regarding the level of available insurance coverage was an affirmative misrepresentation, and the district court abused its discretion by imposing sanctions against these three attorneys.[7]

**IV**

The district court exceeded our mandate by considering the conduct of Burns, Wright, and Bieck with regard to the oral and written settlement agreements when *Crowe Sanctions I* implicitly decided these issues. The district court abused its discretion by imposing sanctions on the three attorneys based on a finding of bad faith at the July 11 meeting when the court did not make a finding, and the record lacks clear and convincing evidence, that the purpose of the meeting was to reach a global settlement. As to all three defendants, we therefore reverse the sanctions of three months' suspension from practice in the Western District of Louisiana and payment *in solido* of attorneys' fees.

---

[7] We do not reach the attorneys' allegation that the monetary sanctions imposed violate the *Pearce* principle of judicial vindictiveness because we find no basis for any imposition of sanctions against the three attorneys.

-14-

REVERSED and RENDERED.