IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-60499

DIANE LINN, Individually and as Wrongful Death Beneficiary & Executrix
of the Estate of Decedent John David Linn; AMY LINN, Individually

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi, Aberdeen
No. 1:04-CV-181

Before KING, WIENER, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiffs Diane Linn, on her own behalf and on behalf of the estate of decedent John David Linn, and Amy Linn, appeal the district court's summary judgment dismissal of their action against the United States of America. The district court held that the plaintiffs' case was barred by the independent-contractor exception of the Federal Tort Claims Act. We affirm its judgment on alternative grounds.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

John David Linn ("Linn") died in an accident while helping to repair and upgrade systems at Columbus Air Force Base ("CAFB"). Linn was working for a subcontractor, Kenny Betts Field Service ("Kenny Betts"), at the time. CAFB is an United States Air Force flight training center located in Columbus, Mississippi. CAFB utilizes a Centralized Aircraft Support System (the "CASS"). The CASS provides high-pressure air and electrical power to T-38 jet aircraft, which assists in the ignition of the jets' engines. The high-pressure air in the CASS is pumped from compressors to pneumatic service lines through manholes that extend approximately twenty feet underground. The compressed air is then piped from the service lines to the T-38 jets. The compressed air ultimately spins the T-38 jets' turbine engines and, thereby, permits the jets' engines to start.

The CASS became operational in 1985, and was operated and maintained by DynCorp International ("DynCorp") pursuant to an aircraft maintenance contract. After nearly fifteen years of use, the CASS was in need of overall repair and renovation. On July 25, 2000, therefore, CAFB sought to contract the work out through a competitive bidding process by posting a Pre-Solicitation Notice on the government's Electronic Posting System. CAFB received bids from five construction firms, including SunBelt Builders, Inc. ("SunBelt").

Neil Cole, CAFB's director of business operations, concluded in a letter dated September 19, 2000, that SunBelt had sufficient capabilities and expertise to complete the construction repairs and upgrades on the CASS. SunBelt had experience with large construction contracts, including natural gas line piping, and had previously performed construction work at CAFB. Accordingly, on September 28, 2000, SunBelt was awarded a firm, fixed-price contract to repair and upgrade the CASS in the amount of $1,190,000. CAFB did not contract with

any other firm, although SunBelt subcontracted some of the work. Kenny Betts was one such subcontractor.

On December 22, 2000, SunBelt made an initial inspection of the CASS manholes in preparation for the construction project. It then commenced construction in January, 2001. Due to flight training requirements, SunBelt only took control of the CASS from DynCorp during non-flying hours, meaning sometime after 4:00 or 4:30 p.m. on weekdays and at all times on weekend days. Neither CAFB nor DynCorp personnel supervised SunBelt during these times. By August 1, 2001, all of the necessary repairs to eight of nine CASS manholes had been completed, inspected and accepted by CAFB. The last manhole, manhole number six, was scheduled to be completed and inspected by CAFB's engineering technician, Gurley Sudduth, on Saturday, August 4, 2001.

On the morning of August 4, 2001, when Sudduth arrived to inspect manhole number six, Kenny Betts' workers, including Linn, were still installing pipe couplings to the pressure piping in the manhole. Sudduth therefore left the site and promised to return later in the day. Shortly after lunch, with the work mostly completed, Kenny Betts increased the air pressure in the CASS to its maximum operational pressure in order to test the manhole for potential air leaks. Linn was in the manhole at that time. As he began climbing out of the manhole, an explosion of highly pressurized air occurred, ejecting him upward through the manhole and onto a runway's surface. As a result, Linn sustained fatal head injuries.

At the time of Linn's death, no personnel from CAFB were present nor did CAFB personnel pressurize the CASS. A subsequent investigation concluded that the explosion occurred because a pipe coupling on an air line was not installed according to the manufacturer's specifications.

On June 1, 2004, the plaintiffs filed the instant suit against the United States pursuant to the Federal Torts Claims Act (the "FTCA"), 28 U.S.C.

§ 1346(b)(1).[1]  In their January 12, 2005, amended complaint, the plaintiffs averred that CAFB employees never warned Linn that it was unsafe to enter the CASS manhole while the system was pressurized nor otherwise trained him to safely work on the CASS.  Yet according to the amended complaint, the United States had an affirmative duty to warn Linn and others of dangerous conditions at CAFB, to adequately supervise its premises to avoid or eliminate dangerous conditions, and to adequately train and supervise individuals working at CAFB, including employees of independent contractors, such as Linn.  Therefore, the plaintiffs alleged four counts of negligence against the United States that proximately caused Linn's death:  (1) failure to train individuals with regard to working in hazardous spaces; (2) failure to train and warn with regard to working in hazardous spaces; (3) failure to warn about and abate dangerous conditions on its premises; and (4) failure to supervise employees and contractors to ensure that activities at CAFB were conducted in a safe manner.

On January 26, 2005, the United States moved to dismiss the case for lack of subject matter jurisdiction or, in the alternative, for summary judgment.  The United States argued that:  (1) the district court lacked subject matter jurisdiction because the negligent acts that caused Linn's death were made by SunBelt and Kenny Betts, and the independent-contractor exception to the FTCA bars actions based on the conduct of the government's independent contractors; and, (2) even if the district court had jurisdiction, the United States did not owe a duty of care to Linn under Mississippi law because Linn was under

---

[1] The plaintiffs also brought suit against SunBelt, Cross Electrical Service, LLC ("Cross"), an electrical subcontractor, and Victaulic Company of America ("Victaulic"), the manufacturer of the pipe coupling that caused the explosion when it burst off the air line. Cross was never served with a complaint, however, and was dismissed on September 19, 2005. SunBelt and Victaulic, meanwhile, were dismissed by agreement on October 20, 2005, and May 21, 2007, respectively.  The claims against these defendants are relevant to this appeal only inasmuch as they explain the delay between the district court's summary judgment order and the district court's final judgment.

the direct control and supervision of SunBelt and Kenny Betts at the time of his death.  In support of its motion, the United States submitted its contract with SunBelt, and argued that it was clear from the contract that SunBelt assumed control for the implementation of the CASS project and responsibility for the safety of its employees and its subcontractors' employees.

The United States also submitted affidavit testimony from individuals involved in the CASS project that generally touched upon either:  (1) CAFB's purported lack of control over the CASS project; or (2) the United States' claim that it warned SunBelt and Kenny Butts concerning the hazards associated with working on the CASS.  With regard to the government's purported lack of control over the CASS project, Cole, CAFB's director of business operations, stated in his affidavit that SunBelt "was responsible for the hiring, supervision, payment and safety of all on-site personnel, including subcontractors and their employees." While he attended weekly meetings to assess the "project's progress . . . and to discuss the contracted repair work scheduling[,]" Cole also claimed that SunBelt always controlled the nature, performance and method of the contracted work. Gerald Givens, the construction manager for the civil engineers at CAFB, concurred.  He stated that during non-flight hours, when the CASS was being repaired, both the CASS and the work site were controlled by SunBelt, CAFB employees did not supervise or direct SunBelt's work, and CAFB's only role in the actual construction was to approve a project after it was completed. Moreover, according to Sudduth, the CAFB inspector, he would only inspect the completed projects for flaws in the work.  Yet if there were any flaws, he would merely bring them to the attention of SunBelt, rather than providing any advice or supervision as to how to fix the defects.

With regard to the United States' alleged failure to warn Linn, both Givens and Morgan Murphy, the resident engineer for the United States Army Corps of Engineers at CAFB, testified that they warned Randy McGee, SunBelt's

project manager, of the hazards associated with working on the CASS. Furthermore, James Mooney, a DynCorp supervisor stationed at CAFB, testified in his affidavit that he "discuss[ed] the dangers and hazards of the [CASS] manholes with the subcontractor (Kenny Betts) before the accident on August 4, 2001, which included the warning that no one should be in the manholes while they were under high pressure."

In response, the plaintiffs argued that the district court had jurisdiction under the FTCA and that genuine issues of material fact precluded the entry of summary judgment. First, the plaintiffs argued that the independent-contractor exception of the FTCA did not bar their suit because they merely sought to hold the United States responsible for the negligent actions of its employees, not for the corresponding negligence of Kenny Betts or the other defendants. Second, the plaintiffs argued that summary judgment was improper because: (1) under Mississippi law the United States owed a duty of care, as a premises owner with control over a construction project located on its premises; and (2) the United States failed to warn or train workers how to safely work on the CASS. In support of the latter claim, the plaintiffs submitted a citation issued by the United States Department of Labor to CAFB finding that CAFB violated regulations promulgated under the Occupational Safety and Health Act ("OSHA") by failing to provide training or warnings concerning the hazards associated with entering confined spaces of the CASS. In addition, the plaintiffs claimed that the government's contract with SunBelt gave the United States control over the construction project and vested it with responsibility for the safety of any and all workers.

On August 8, 2005, the district court granted the United States summary judgment. The district court determined that the independent-contractor exception to the FTCA barred the plaintiffs' suit because Linn was the employee of an independent contractor, and the United States did not have sufficient

control over either the CASS project or Kenny Betts such as to convert Linn's status into that of a de facto employee of the government. Because the district court held that the plaintiffs' claim was not cognizable under the FTCA, it never reached the question whether the record established a genuine issue of fact concerning the United States' liability under Mississippi law.

On June 19, 2007, the plaintiffs filed a timely appeal. Both parties have briefed the issues of subject matter jurisdiction and whether the United States owed a duty of care to Linn under Mississippi law.

## II. DISCUSSION

### A. Standard of Review

We review a grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000) (citations omitted). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing Fed. R. Civ. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citation and quotation omitted).

### B. Independent-contractor exception

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312

U.S. 584, 586 (1941)). "Courts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998) (citing United States v. Nordic Vill., Inc. 503 U.S. 30, 34 (1992)). The FTCA constitutes a "limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813 (1976).

The relevant provision of the FTCA provides that:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). By its own terms, the FTCA only waives sovereign immunity for injuries caused by an "employee of the Government," § 1346(b)(1), but excludes from that waiver injuries caused by "'any contractor with the United States,'" Orleans, 425 U.S. at 813-14 (quoting 28 U.S.C. § 2671); Means v. United States, 176 F.3d 1376, 1379 (11th Cir. 1999) (citation omitted) ("The alleged tortfeasor's status as an 'employee of the government' is the sine qua non of liability under the FTCA."). This is known as the independent-contractor exception to the FTCA, and it must be given due regard when a court considers whether jurisdiction exists. Orleans, 425 U.S. at 814; see also Linkous, 142 F.3d at 275; Broussard v. United States, 989 F.2d 171, 174 (5th Cir. 1993) (citation omitted).

When there is a dispute whether the independent-contractor exception bars a lawsuit, it is most often the case that the dispositive question is whether or not the individual that caused the plaintiff's injuries is an employee of the federal government or of an independent contractor. See, e.g., Rodriguez v. Sarabyn, 129 F.3d 760, 765 (5th Cir. 1997); Linkous, 142 F.3d at 276-77; Broussard, 989 F.2d at 177-76. This is a question of federal law, and we have stated that the "critical factor in determining whether an individual is an employee of the government or an independent contractor is the power of the federal government to control the detailed physical performance of the individual." Linkous, 142 F.3d at 275 (citing Orleans, 425 U.S. at 814; Broussard, 989 F.2d at 174).

This is exactly the type of analysis the district court undertook to resolve this case. However, the district court focused its attention on whether Linn was an independent contractor or an employee of the United States. The district court summarized its understanding of the plaintiffs' argument by stating that: "[i]n essence, it is the plaintiffs' position that the independent-contractor exception to the FTCA does not bar the instant case . . . because the United States, through the Department of the Air Force, exercised effective control over the CASS project[,] thereby converting Linn into an employee of the United States." After reviewing the evidence concerning the government's alleged control of the CASS project, the district court determined that the facts "weigh[ed] heavily in favor of Linn being an independent contractor in relation to the United States as opposed to an employee." As a result, "pursuant to the independent-contractor exception to liability under the FTCA, the court conclude[d] that the United States [was] immune from liability for Linn's terrible and tragic death."

The government continues on appeal to argue that the independent-contractor exception bars the plaintiffs' claims because Linn was an employee

of an independent contractor, not an employee of the United States. We disagree. First, it is simply irrelevant to the plaintiffs' claims whether Linn worked for an independent contractor. See, e.g., Gotha v. United States, 115 F.3d 176, 179-82 (3d Cir. 1997) (holding that an employee of an independent contractor could bring a suit under the FTCA based on the government's allegedly negligent failure to provide safe access to an office trailer on a naval base); Will v. United States, 60 F.3d 656, 660 (9th Cir. 1995) (holding that a district court erred in dismissing an independent contractor's suit under the FTCA). The independent-contractor exception is concerned with whether the tortfeasor was an employee of the United States or an independent contractor, not with the status of the plaintiffs' decedent. See Rodriguez, 129 F.3d at 765; Linkous, 142 F.3d at 276-77; Broussard, 989 F.2d at 177-76.

Second, the plaintiffs in this case are not seeking to hold the United States vicariously liable for the acts of SunBelt, Kenny Betts or any other independent contractor. Rather, they are seeking to hold the United States directly liable for Linn's death because federal employees (CAFB personnel) failed to adequately warn, train and supervise him, and failed to adequately abate dangerous conditions on federal property. The mere fact that independent contractors might also have caused Linn to be injured does not implicate the independent-contractor exception. See Phillips v. United States, 956 F.2d 1071, 1077-78 (11th Cir. 1992) (holding that the independent-contractor exception did not bar the suit of an independent contractor's employee because the employee sought to hold the Army Corps of Engineers responsible for its own negligent failure to carry out its safety responsibilities).

In Sandoval v. United States, 980 F.2d 1057, 1058 (5th Cir. 1993), a federal prisoner brought suit against the United States under the FTCA because a United States marshal negligently placed him in a prison facility run by a private corporation where he was injured as a result of the corporation's tortious

conduct. The district court dismissed the case, determining that the action could not be maintained under the FTCA because the government could not be held responsible for the acts of an independent contractor. Id. We reversed, however, since the prisoner was merely attempting to seek to hold the government responsible for the government's own conduct, namely, negligently placing hm under the care of the corporation's employees. Id. at 1059. Similarly, here, the plaintiffs are seeking to hold the United States liable for the conduct of its employees, not the acts of independent contractors.

C.  The plaintiffs' substantive claims

Unlike our review of the independent-contractor exception above, which was based on federal law, whether the United States is liable for a "negligent or wrongful act or omission of any employee of the Government" under the FTCA is generally determined "in accordance with the law of the place where the act or omission occurred." § 1346(b)(1); but see Laird v. Nelms, 406 U.S. 797, 799 (1972) ("Regardless of state law characterization, the [FTCA] itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance,' . . . on the part of the Government."). The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." FDIC v. Meyer, 510 U.S. 471, 478 (1994) (citations omitted); see also Bodin v. Vagshenian, 462 F.3d 481, 489 (5th Cir. 2006) (citation omitted) ("Whether the United States owed an independent duty to the plaintiffs is a question of . . . state law."). Here, both parties agree that Mississippi law governs the plaintiffs' substantive claims.

"The elements of a negligence action are well-settled in Mississippi." Gulledge v. Shaw, 880 So. 2d 288, 292 (Miss. 2004). A plaintiff must prove "(1) duty, (2) breach, (3) causation, and (4) injury." Id. at 292-93 (citing Miss. Dep't

11

of Transp. v. Cargile, 847 So. 2d 258, 262 (Miss. 2003). The only element we need discuss in this appeal is duty.[2]

Generally, under Mississippi law, the owner of a premises "has a duty to use reasonable care to keep its premises in a reasonably safe condition for business invitees." Coho Res., 829 So. 2d at 10 (quoting Jones, 701 So. 2d at 782). But this duty does not automatically extend to the employees of independent contractors. See id. at 10-11 (citation omitted). The Mississippi Supreme Court has held that:

> Where a party . . . contracts with another . . . to perform original construction or repair work . . . and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liability for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work.

Magee v. Transcon. Gas Pipe Line Corp., 551 So. 2d 182, 185 (Miss. 1989); see also Jackson Ready-Mix Concrete v. Sexton, 235 So. 2d 267, 271 (Miss. 1970) ("[T]he owner or occupier is under no duty to protect [a contractor's employees] against risks arising from or intimately connected with defects of the premises,

---

[2] The United States also argues that even if it had a duty to the plaintiffs it did not breach that duty because it is undisputed that SunBelt and Kenny Betts were warned by CAFB employees of the hazards associated with working on the CASS. The United States relies on Jones v. James Reeves Contractors, Inc., 701 So. 2d 774, 783 (Miss. 1997) (citations omitted), where the Mississippi Supreme Court held that even if a premises owner owes a duty of care to an independent contractor's employee, that duty is satisfied if the owner warns the independent contractor of a hazard, regardless of whether the warning is given directly to the contractor's employees. However, we do not rely on this basis for two reasons. First, assuming arguendo that the OSHA citation issued to CAFB is admissible, there is a genuine dispute concerning whether CAFB employees issued any warning to SunBelt and Kenny Betts. Second, in a recent case, the Mississippi Supreme Court indicated that in some circumstances when a duty exists, warning a contractor of hazardous conditions is not sufficient to satisfy an owner's duty of care. Coho Res., Inc. v. McCarthy, 829 So. 2d 1, 14 (Miss. 2002) (holding that an owner had a duty not only to warn of dangerous conditions, but also to supervise workers in a safe manner).

or of machinery or appliances located thereon, which the contractor has undertaken to repair."). What is critical to determining whether the premises owner has a duty to the employees of an independent contractor is whether the owner maintains de jure control (under the contract) or de facto control (the contract notwithstanding) over the performance of that aspect of the work that has given rise to the injury. Magee, 551 So. 2d at 186 (citations omitted); Coho Res., 829 So. 2d at 13.

In Magee, the Mississippi Supreme Court held that the owner did not retain sufficient de jure control over a project because: (1) a provision of the contract required the contractor to assume full responsibility for conditions pertaining to the work, the site and all conditions therewith; and (2) another provision of the contract required the contractor to assume responsibility for the care and maintenance of the work under construction until the work was accepted as completed by the owner. 551 So. 2d at 186. Nor did the plaintiff offer evidence disputing the owner's claim that it did not retain de facto control of the work. Id. Thus, notwithstanding the fact that the owner had an employee on site who would periodically inspect the work of the contractor, the owner did not owe the contractor's employee a duty of care. Id. at 185-86.

By contrast, in the most recent Mississippi Supreme Court case to address this issue, Coho Resources, the court held that there was sufficient evidence to create a jury question as to whether a premises owner retained substantial control over a work site. 829 So. 2d at 13. That case involved a wrongful death verdict based on the death of an independent contractor's employee working to restore production on an old oil well. Id. at 6. The court noted that while the independent contractor assumed full and complete responsibility for the conditions pertaining to the work, the contract at issue also vested the owner with the right to dismiss the independent contractor's personnel and to terminate the contract if a complete safety program was not followed. Id. at 11.

In addition, the contract was a "day rate" or "hourly rate" contract, which stood in contrast to a "turnkey" contract under which a well-service company is paid a set price and is solely responsible for the work. Id. at 12.

Moreover, testimony indicated that the owner retained de facto control of the project because: (1) a "company man" of the owner was on site 75%-85% of the time; (2) the owner provided the independent contractor with a step-by-step procedure that the contractor was required to follow; and (3) the contractor's crew was required to follow the owner's procedure under the supervision of the owner's company man, including the operation that resulted in the accident. Id. at 12-13. Indeed, a so-called company man admitted at trial that he had ultimate control over the work, that he was the "boss" of the work site ("no ifs, ands, or buts about it"), and that the independent contractor's employees were required to stop and start working when he told them. Id. Based on all the evidence of control, the court concluded that whether the exception to the general rule that an owner does not have a duty to protect an independent contractor applied in that case was a jury question that could not be overturned. Id. at 13.

In the instant case, the plaintiffs claim that under Coho Resources a genuine issue of fact exists concerning the amount of control the government retained over the repair and upgrade of the CASS. The plaintiffs list a number of contract terms that they claim vested the government with control, including provisions wherein SunBelt agreed to: (1) limit its use of the work site so as to allow government occupancy; (2) coordinate progress meetings with a CAFB contracting officer; (3) notify a CAFB officer four days before a pre-installation meeting; (4) submit a written request before cutting or altering elements of the CASS that affected the efficiency, maintenance or safety of the elements; (5) identify hazardous substances or conditions exposed during the work to a CAFB contracting officer for decision or remedy; (6) review network drawings with a

CAFB contracting officer; (7) submit shipping drawings and samples to a CAFB contracting officer to check for conformance with the contract; (8) receive approval before storing hazardous substances on CAFB premises; (9) stop working on the project if the CAFB contracting officer became aware of a serious or imminent safety risk and SunBelt failed to take corrective action; (10) maintain a superintending officer satisfactory to CAFB; (11) obtain approval from a CAFB contracting officer for the machinery and other mechanical equipment to be incorporated into the work; and (12) terminate from the project any employee that CAFB deemed incompetent, careless or otherwise objectionable.

While lengthy, we do not agree that these contract provisions are sufficient to establish that the government retained substantial control over performance of the CASS project. First, some of the provisions simply do not show de jure control at all, rather, they merely indicate that CAFB retained the right to monitor the progress of the service for which it paid, and to ensure the quality of the work. See Magee, 551 So. 2d at 185-86 (citation omitted) ("The fact that [the owner] had employees that conducted periodic inspections on the work could change nothing."); Int'l Paper Co. v. Townsend, 961 So. 2d 741, 750 (Miss. Ct. App. 2007) (stating that the ability to check for quality did not constitute supervision). Second, none of the provisions is specific to the aspect of the project that gave rise to Linn's death, namely, the testing of the manhole for air leaks. See Jones, 701 So. 2d at 783 ("Therefore, since [the contractor] had unfettered control over that portion of the work which gave rise to the injury, . . . [the owner] is absolved of responsibility . . . ."); Magee, 551 So. 2d at 186 (citations omitted) ("What is critical is whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury."); Int'l Paper Co., 961 So. 2d at 749 (holding that owner of premises did not owe a duty of care to an independent contractor because it

exercised no control over the aspect of work which gave rise to the injury even though it could control other aspects of the work).

Third, while the contract set forth an array of contract specifications, the means and methods of implementing those specifications were generally left to the discretion of SunBelt. Unlike in Coho Resources, the specifications the plaintiffs highlight are not step-by-step procedures for the completion of the entire project. Fourth, SunBelt agreed to assume the responsibility to provide a safe work environment and procedures. Fifth, unlike in Coho Resources, the contract at issue in this case was a firm, fixed-price contract, akin to the turnkey contract that the Coho Resources court indicated was less indicative of de jure control because the contractor is paid a set price based on completion of the contract.

Lastly, while we recognize that the court in Coho Resources relied in part on the fact that the contract there, as here, gave the owner a right to dismiss the independent contractor's personnel and a limited right to stop work based on serious safety concerns, we do not believe that this fact alone is dispositive. To the contrary, we believe that the most important facts to the Coho Resources court are missing here, namely, evidence tending to indicate that CAFB had de facto control over the aspect of the project giving rise to Linn's death. The only evidence concerning the issue of de facto control (or lack thereof) was offered by the government. According to the affidavit testimony of CAFB personnel, CAFB personnel never supervised the performance of SunBelt or Kenny Betts' personnel in the performance of the contract, including the testing of manholes for air leaks. Indeed, there was no CAFB supervisor monitoring the testing of manhole six on the day of the accident nor were the means or methods for testing the manhole otherwise prescribed by a CAFB employee. In short, unlike in Coho Resources, CAFB had no "company man" on site during the CASS project who was in fact, if not technically, the ultimate supervisor of the project.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.