# United States Court of Appeals for the Fifth Circuit

———————

No. 24-60087

———————

United States Court of Appeals
Fifth Circuit

**FILED**
September 5, 2024

Lyle W. Cayce
Clerk

Andrew John Stankevich,

*Plaintiff—Appellant*,

*versus*

Mississippi College School of Law,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-356

———————————————————————

Before Ho, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Andrew Stankevich sued the Mississippi College School of Law ("MC Law") for disability discrimination and breach of contract because it banned him from campus after he posted a threatening message aimed at school staff and students on Facebook. The district court dismissed Stankevich's claims with prejudice. For the reasons stated below, we affirm.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

I.

At this pleadings stage, we generally "accept all well-pleaded facts as true and view those facts in the light most favorable" to the plaintiff. *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010) (cleaned up) (citation omitted). Stankevich's relevant allegations follow.

Stankevich enrolled at MC Law in 2009. His grades improved each semester, and he eventually landed on the Dean's List. He also regularly organized events for visiting speakers to discuss various issues.

The tide began to shift in the fall semester of his second year. He emailed MC Law faculty members to request free counseling services but never heard back. Then, in the spring, he formally charged another student with violating the honor code. This charge was apparently baseless. And he had recently admitted to "isolating himself," which negatively affected his mental health and caused him to think "disturbing" thoughts. So professors started to worry that he was losing "touch with reality" and that he may be a "danger to himself and others."

The fall semester of his third year was fraught with trouble. He sensed that professors were calling him "mentally incompetent," and that they believed he was "otherwise suffering from psychosis." Students shared the same concern, refusing to team with him on a group project. Stankevich subsequently requested psychological evaluation with participation from MC Law faculty. They declined the invitation.

Around October 2011, MC Law hosted a pro-life attorney to speak about the upcoming election on the proposed Personhood Amendment to the Mississippi Constitution. According to Stankevich, this attorney "seriously threatened the audience with the wrath of God, including death, natural disasters, and other horrific outcomes" if they did not vote in favor of the amendment.

No. 24-60087

About a month later, Stankevich came across a Facebook post prompting users to post "something funny." Stankevich responded with "God smites MC Law and MC undergrad . . . the staff and students that suck all die a horrible death. Ha ha ha ha!" Students saw this post and "genuine[ly] fear[ed]" that he would hurt them or MC Law faculty.

Later that same day, MC Law sent Stankevich a "Notice Not to Enter." The notice prohibited him from returning to campus for any reason other than taking his final fall-semester exams. It also required that he get a psychological evaluation before he could return for classes in the spring. With that requirement, MC Law provided a list of four approved psychologists and offered to pay for the psychological evaluation. MC Law later clarified that Stankevich was "indefinitely" banned from campus.

From then on, Stankevich worked with MC Law professors from a distance until he eventually graduated in May 2014. He took up a pro bono exoneration project in the meantime. But by the fall of 2012, he had "develop[ed] psychosis" that primarily manifested as "persecutorial delusions" about himself and his client. He was convinced that they were engaged to be married, that MC Law was intent on stalking and defaming him, and that he was "a potential killer." MC Law subsequently censured him for hurling (admittedly) unfounded allegations at the school during this time. Stankevich then filed various suits against MC in New York and Washington, D.C. They were either voluntarily dismissed or unsuccessful on the merits.

Stankevich's psychosis went undiagnosed and untreated until 2019. Even then, he abused stimulants and attempted suicide. In 2022, he came to believe that MC Law had "psychologically conditioned" him to believe that he was "a danger to [himself] and others."

This suit followed. In his Third Amended Complaint, Stankevich ultimately claimed that MC Law breached their contract and violated the

Americans with Disabilities Act ("ADA") when it banned him from campus. He requested damages and an injunction ordering MC Law to host a graduation ceremony for him. The district court granted MC Law's motion to dismiss the suit for failure to state a claim and dismissed the suit with prejudice. Stankevich timely appealed.

## II.

Stankevich claims that the district court erred either by dismissing his claims, or by dismissing his claims with prejudice. Neither argument has merit.

*Failure to State a Claim*. Stankevich insists that he pled *prima facie* ADA and breach-of-contract claims. We review a district court's decision to dismiss a complaint de novo. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). While pro se litigants are held to a more lenient pleading standard, *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam), they are still required to "plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam).

Stankevich's ADA claim misses this mark. To establish a *prima facie* discrimination claim, he needed to show three things. First, he is a "qualified individual" as defined by the ADA. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004) (referencing 42 U.S.C. § 12132). Second, MC Law intentionally discriminated against him in some way. *See id.*; *S.B. on behalf of S.B. v. Jefferson Par. Sch. Bd.*, 2023 WL 3723625, at *3 (5th Cir. May 30, 2023). And third, MC Law's actions were taken because of his disability. *See Melton*, 391 F.3d at 671–72. To be sure, his disability need not have been MC Law's "sole" motivation. *See Pinkerton v. Spellings*, 529 F.3d 513, 519

(5th Cir. 2008) (per curiam).  But it still must have been a "motivating factor."  *Id.*

The third element poses a problem for Stankevich.  He argues that MC Law banned him from campus because of his disability—something that apparently led the school to believe he was "inherently dangerous."  Appellant Br. 20 (citing *Newberry v. East Texas State Univ.*, 161 F.3d 276 (5th Cir. 1998)).  But nothing in his complaint or attachments support this inference.  By Stankevich's own admission, MC Law professors had long suspected that he suffered from a severe, undiagnosed, and untreated psychiatric disorder.  Had the school been motivated by some animus against psychiatric disorders, it surely would have acted against him then.  Yet it did not limit his campus access until he suggested on Facebook that there was humor in imagining MC staff and students dying "a horrible death."  MC Law also made clear that the limitation was imposed in response to Stankevich's Facebook post.  The limitation was a safety measure—not a discrimination tactic.  Without more, there is no basis for believing that MC Law was motivated by Stankevich's disability.  *See Newberry*, 161 F.3d at 279–80; *S.B.*, 2023 WL 3723625, at *3.

Stankevich insists that there *is* more.  We can infer MC Law's discriminatory motive, he says, by accounting for certain circumstantial evidence.  He suggests that the campus ban was a "disproportionate" response to his Facebook post.  That is, MC Law initially promised to lower its guard once a psychologist evaluated him and approved his return to campus.  But the ban remained even after he was approved.  Stankevich also claims that MC Law treated similarly situated people more favorably.

We disagree.  Psychologists may well have approved his return to campus before he graduated.  But there is no indication that MC Law knew that.  As far as we can tell, MC Law only knew about an evaluation performed by Dr. Deborah Musczek in 2011.  She worried that Stankevich was an "actual

5

threat" to MC Law staff and students and shared that concern with the school. We cannot say that MC Law's campus ban was disproportionate to the seriousness of his behavior.

There is no indication that MC Law treated "similarly situated" people more favorably, either. To serve as proper comparators, we typically require that others share "nearly identical" experiences. *See Mueck v. La Grange Acquisition, L.P.*, 75 F.4th 469, 484 (5th Cir. 2023). Stankevich offers the pro-life speaker who visited campus and a former MC student who was charged with plagiarism. But the pro-life speaker never had—or expected to have—continuous campus access. And the former student never threatened the safety of MC staff or students. So they are not similarly situated to Stankevich.

His breach-of-contract claim fares no better. The parties agree that Mississippi law governs. *See Linn v. United States*, 281 F. App'x 339, 346 (5th Cir. 2008) (per curiam); *Duvall v. Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir. 1991) (per curiam). Mississippi law requires that Stankevich show two things to establish his breach-of-contract claim. First, "a valid and binding contract exists" between him and MC Law. *Murphy v. William Carey Univ.*, 314 So. 3d 112, 123 (Miss. Ct. App. 2020). And second, MC Law breached that contract "without regard to the remedy sought or the actual damage sustained." *See id.* (citations omitted).

Stankevich insists that he pled these two points. That is, MC Law breached an implied covenant of "good faith and fair dealings." He relies on *University of Southern Mississippi v. Williams* and *University of Mississippi Medical Center v. Hughes* to say that he need not plead any other details to avoid dismissal. 891 So.2d 160 (Miss. 2004); 765 So.2d 528 (Miss. 2000). We have consistently said, though, that plaintiffs must allege something more than mere legal conclusions. *See Watson v. FedEx Express*, 2024 WL 340817, at *2

(5th Cir. Jan. 30, 2024); *Thurman v. Med. Trans. Mgmt., Inc.*, 982 F.3d 953, 955–56 (5th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stankevich must "plead sufficient facts" to support each element of his claim. *See Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023) (citing *Chhim*, 836 F.3d at 470). He failed to do so.

*Dismissal With Prejudice.* Stankevich alternatively claims that his suit should have been dismissed *without* prejudice. We review these types of claims for abuse of discretion. *See Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 446 (5th Cir. 2023); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566–67 (5th Cir. 2003). A district court abuses its discretion when it makes an error of law. *Spivey*, 342 F.3d at 446. In these circumstances, that may mean that the court dismissed a pro se complaint with prejudice before affording the opportunity to amend, *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998), or before the "best case" was pled, *see Thompson v. City of Weatherford Mun.*, 2023 WL 8368867, at *2 (5th Cir. Dec. 4, 2023) (per curiam).

Neither is true here. Stankevich had two opportunities to amend his complaint—once by right and once again on the court's order. The court explicitly told him to "plead his best case" in his Third Amended Complaint. It also explained *how* to plead his best case, ordering him to "allege facts going to each element of each claim." Stankevich still failed "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). We do not see any viable claims that Stankevich could include in a Fourth Amended Complaint. The district court did not abuse its discretion in dismissing his complaint with prejudice.

We affirm.