551 So.2d 182 (1989)
Mrs. James C. MAGEE, Administratrix of the Estate of James C. Magee, Deceased
v.
TRANSCONTINENTAL GAS PIPE LINE CORPORATION and Singley Construction Company.
No. 58579.
Supreme Court of Mississippi.
August 2, 1989.
Rehearing Denied October 4, 1989.
Crymes G. Pittman, Cothren & Pittman, Jackson, for appellant.
John E. Wade, Jr., Brunini, Grantham, Grower & Hewes, Rexford T. Brown, Downey & Brown, Jackson, Donald E. Hockaday, III, Houston, Tex., for appellee.
*183 Before ROY NOBLE LEE, C.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, For the Court:

I.
Though rather easily within the coverage of the Mississippi Workers' Compensation Act, today's claimant  administratrix of the estate of a welder injured on a natural gas pipe laying project  proceeds in tort. Denying employment status, administratrix sues the pipe laying contractor for whom her deceased husband worked. Beyond that, she moves against the project owner, notwithstanding that de jure and de facto control of the pipe laying process had been lawfully vested in the contractor.
The Circuit Court summarily exonerated each defendant. As Administratrix offered no cognizable evidence that might be said to generate any genuine issue of material fact, we affirm.

II.

A.
Transcontinental Gas Pipe Line Corporation ("Transco") is a Delaware corporation doing business in Mississippi. Transco purchases natural gas from fields in Texas, Louisiana and Mississippi and transports this gas through an extensive interstate pipeline system to its customers in the Northeast.
Singley Construction Company ("Singley") is a Mississippi corporation located in Columbia, Mississippi. On April 2, 1982, in order to connect a newly producing well with its existing system, Transco contracted with Singley whereby Singley agreed to construct approximately 8.6 miles of underground pipeline in Jefferson Davis, Lamar and Marion Counties. The right-of-way had been procured by Transco. Soon thereafter Singley began work on the construction project.
James C. Magee, born December 13, 1923, was a journeyman welder. He began work for Singley on the Transco pipeline construction project on April 22, 1982 after a Transco employee had administered a "welding examination" to assess his skills. Singley paid Magee at the predetermined rate of $25.00/hour. As is the practice in the industry, Magee provided his own welding equipment while Singley provided the materials. During the construction of the pipeline, a Transco employee would periodically inspect the quality of Singley's work, including that done by Magee.
Singley took control of the worksite, used its equipment to excavate a v-shaped trench, and began laying pipe therein. On June 2, 1982, Magee was working in a trench, lining up a section of ten-inch pipe suspended by a cable. The trench bank caved in, dislodging the pipe, which struck Magee and fractured his left leg in the area of his knee. He was treated at a local hospital and was released. He returned to the hospital two days later for surgical correction of the fracture. Fidelity and Guaranty Insurance Underwriters, Singley's workers' compensation insurance carrier, provided coverage for Magee's medical costs.

B.
On July 18, 1984, Magee commenced this civil action by filing his complaint in the Circuit Court of the First Judicial District of Hinds County. Magee named Singley and Transco as defendants and charged that each was "guilty of negligence, which was the proximate cause ... of the accident in question and the injuries sustained therein by plaintiff."
In answering the complaint, Singley advanced the defense that, since at the time the accident occurred Magee was engaged in its employ, his exclusive remedy as against Singley was via the Mississippi Workers' Compensation Act. Miss. Code Ann. § 71-3-9 (1972).
Transco's answer argued, first, that Singley, as an independent contractor, had assumed responsibility for the safety of the workplace and its employees, by reason of which Transco could not be held liable for the negligent maintenance of the construction site. Second, Transco alleged that, because it had contractually compelled Singley to procure workers' compensation *184 insurance, it was immune from suit  i.e. the "statutory employer" defense.
On December 6, 1984, James C. Magee died of a heart attack, a cause unrelated to the present action, and his widow as administratrix was substituted as the party plaintiff in this matter.
On May 27, 1986, Transco moved for summary judgment. Two days later Singley filed a like motion. Magee offered no evidence or sworn testimony in opposition. On December 12, 1986, the Circuit Court granted both motions, stating only that "these motions are well taken and should be granted." Final judgment was entered in favor of both Singley and Transco, finally dismissing Magee's Administratrix' complaint.
This appeal has followed.

III.
Magee's Administratrix argues that the Circuit Court erred when it entered judgment in favor of Transco. She contends there are reflected in the record and in proper form genuine issues of material fact precluding summary judgment. Rule 56(c), Miss.R.Civ.P. Since the Circuit Court failed to give the basis of its ruling, though we must presume it had something in mind, we consider the defenses asserted below that have promise as possible bars to the action.

A.
On Transco's "statutory employer" defense,[1] Magee's Administratrix is more than right. Indeed, Transco does not seriously press the point.
Transco purchased the right-of-way for the pipeline and then contracted the construction of the project in its entirety to Singley. Nothing in Miss. Code Ann. § 71-3-7 (1972) imposed upon Transco the duty to secure or pay compensation to Singley's employees. Because Transco was not a "contractor", and because Singley had secured compensation for Magee's benefit, the Act imposed no duties on Transco. Accordingly, Transco enjoys no benefits under the Act. Transco may not gain tort immunity by assuming compensation obligations which in fact and in law it did not have. Transco's position is indistinguishable from that of the "owners" in Nash v. Damson Oil Corp., 480 So.2d 1095 (Miss. 1985) and Falls v. Mississippi Power & Light Co., 477 So.2d 254 (Miss. 1985); see also Amoco Production Co. v. Murphy, 528 So.2d 1123, 1124 (Miss. 1988). That Transco required Singley to procure compensation coverage, "though laudable, does not grant the immunity." Nash, 480 So.2d at 1101 (R.N. Lee, [then] P.J., concurring).
Morris v. W.E. Blain & Sons, Inc., 511 So.2d 945, 948-49 (Miss. 1987) avails Magee's Administratrix nothing as there is no evidence before this Court suggesting that Magee and Singley were co-subcontractors of Transco.

B.
As an alternative theory of exoneration, Transco claims that the cognizable facts are without contradiction that Singley had complete control over the manner and method of the construction of the pipeline, and, as well, the premises.
The Transco-Singley contract provides that Singley should "assume full and complete responsibility for" the "conditions pertaining to the Work, the site of the Work or its surroundings, and all risks in connection therewith."[2] Singley assumed *185 responsibility for the care and maintenance of the work until completed and accepted by Transco.[3] Moreover, Singley obligated itself to "take all necessary precautions for the safety of its employees."[4]
Before the Court as well are the affidavits of Singley's construction foreman and Transco's on-site welding inspector. The substance of these affidavits is as follows:
(1) Singley maintained control over safety of the worksite.
(2) Singley had control over the manner of construction of the pipeline, including the excavation of the trench.
(3) Singley furnished all of the tools employed in the process of clearing and trenching the right-of-way.
(4) Singley provided all of the employees for the project.
Moreover, George Prescott, Transco's on-site pipeline inspector, testified by affidavit that Singley retained complete control "over the methods and manner in which the pipeline was constructed", including the excavation of the trench, the details of the pipeline construction, the payment of employees, and work-site safety. Transco, according to the affidavit testimony, would merely inspect periodically the work of the Singley employees.
Significantly, Magee did not dispute these material facts by counter-affidavit or otherwise.
Where a party such as Transco contracts with another such as Singley to perform original construction or repair work, or, as here, the laying of pipe, and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liability for injuries experienced by the contractor's workers where those injuries arose out of or were intimately connected with the work. Arising in varying factual settings, our authorities to this general effect are quite clear. See, e.g., Hathorn v. Hailey, 487 So.2d 1342, 1344-45 (Miss. 1986); Fortenberry Drilling Company, Inc. v. Mathis, 391 So.2d 105, 106 (Miss. 1980); Spruill v. Yazoo Valley Oil Mill, Inc., 317 So.2d 410, 413 (Miss. 1975); Mississippi Power Co. v. Brooks, 309 So.2d 863, 866-67 (Miss. 1975); Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267, 271 (Miss. 1970). The fact that Transco had employees that *186 conducted periodic inspections on the work could change nothing. Mississippi Power Co. v. Brooks, 309 So.2d at 867.
What is critical is whether the project owner maintains any right of control over the performance of that aspect of the work that has given rise to the injury. Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988); White's Lumber & Supply Co. v. Collins, 186 Miss. 659, 672, 191 So. 105, 106 (1939); Kisner v. Jackson, 159 Miss. 424, 430, 132 So. 90, 92 (1931). In this setting the undisputed language of the contract becomes important.[5] Specifically, paragraph 4.5 demands that "[Singley] assume full and complete responsibility for any such conditions pertaining to the Work, the site of the Work or its surroundings and all risks in connection therewith." Additionally, paragraph 4.15 states that "[Singley] shall be responsible for the care and maintenance of Work under construction and completed Work until [Transco] accepts the completed Work." By affidavit, Shivers admits that Singley did in fact retain control over the work site.
This is not to say that in cases like this the plaintiff may never win. If he can show that, the contract notwithstanding, the owner maintained substantial de facto control over those features of the work out of which the injury arose, we may have a horse of a different color. And if he can generate a genuine issue of material fact with due regard for the strictures of Rule 56(c) and (e), he may survive summary judgment. The record is Magee's Administratrix' Achilles heel.
The non-moving party wishing to avoid summary judgment must be diligent in opposing a motion for summary judgment. Key Constructors, Inc. v. H & M Gas Company, 537 So.2d 1318, 1323 (Miss. 1989); Grisham v. John Q. Long V.F.W. Post, 519 So.2d 413, 415 (Miss. 1988); Smith v. H.C. Bailey Companies, 477 So.2d 224, 233 (Miss. 1985); Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 749 (Miss. 1984). He may not rely upon the mere unsworn allegation in his pleadings.
More to the point here, the party opposing summary judgment may not create an issue of fact by arguments and assertions in briefs or legal memoranda. Briscoe's Foodland v. Capital Associates, 502 So.2d 619, 622-23 (Miss. 1986); Hill v. Consumer National Bank, 482 So.2d 1124, 1128-29 (Miss. 1986); Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 791-92 (Miss. 1984); Transsurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 46 (1st. Cir.1984); Watts v. United States, 703 F.2d 346, 353 (9th Cir.1983); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2739 (1983).
To be sure, Magee's Administratrix' counsel appeal persuasively in her briefs, and if half of what is asserted there were in the record, matters might be otherwise. She runs afoul our established law that the only unsworn matters available to a party opposing the motion are undenied allegations in his pleadings and admissions secured under Rule 36, Miss.R.Civ.P. To have power to generate a genuine issue of material fact, any other documents, including but not limited to, depositions, answers to interrogatories, or affidavits must, first, be sworn; second, be made upon personal knowledge; and third, show that the party giving them is competent to testify. See Rule 56(e), Miss.R.Civ.P.; In re Estate of Smiley, 530 So.2d 18, 25-26 (Miss. 1988); Walker v. Skiwski, 529 So.2d 184, 186 (Miss. 1988); Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Bush v. Mullen, 478 So.2d 313, 315 (Miss. 1985); Brown v. Credit Center, Inc., 444 So.2d 358, 364 (Miss. 1983).
*187 On May 27, 1986, Transco moved for summary judgment. Two days later, Singley Construction Company filed its motion for summary judgment. The record is devoid of ANYTHING filed by Magee's Administratrix thereafter and prior to the Circuit Court's order of December 12, 1986, granting summary judgment. The unsworn answers previously filed on behalf of Magee's administratrix to Transco's interrogatories are deficient three-fold: (1) they are signed by counsel, (2) they are not given on personal knowledge, and (3) they don't provide any information rebutting Transco's claim in any event. The complaint itself exalts the notion of notice pleading and, in any event, its material allegations are denied.
Because Transco placed sufficient sworn facts before the Circuit Court to rebut Magee's Administratrix' allegations of direct negligence and, in response, she chose to rest upon the allegations contained in her pleadings, the Court did not err in finding that there were no genuine issues of material fact precluding summary judgment. See Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988) (non-movant "remains silent at her peril").
The Circuit Court committed no error when it granted summary judgment for Transco and against Magee's Administratrix.

IV.
Magee's Administratrix argues that the Circuit Court erred when it entered judgment for Singley, as there existed genuine issues of material fact regarding Magee's status as an employee of Singley. She contends that up to the time of Magee's injury he was a self-employed welder  an independent contractor  and was treated as such by Singley. Once the injury occurred Singley rushed to offer Magee workers' compensation benefits in order to absolve itself of third-party tort liability, or so the argument goes.
The point turns on whether Magee was an "employee" of Singley. Miss. Code Ann. § 71-3-3(d) (Supp. 1989) includes within "employee" any person "in the service of an employer under any contract of hire ..., written or oral, express or implied," but excluding "independent contractors" who in turn are defined by Miss. Code Ann. § 71-3-3(r) (Supp. 1989) as "any individual ... who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, ... ."
Again, Magee's Administratrix runs afoul of the record. We have Singley's president, Timothy R. Singley, stating by affidavit that the company had "hired" James C. Magee in April, 1982 to perform part of the welding for the Transco contract and that Magee was injured while so employed. Singley paid Magee $25.00 per hour. Magee offered no evidence sworn testimony in opposition.
Singley would have us hold it immaterial whether Magee was an employee or an independent [sub]contractor. If Magee be an employee, Singley of course enjoys tort immunity by virtue of the exclusiveness of liability provisions of the Mississippi Workers' Compensation Act. Miss. Code Ann. § 71-3-9 (1972). Assuming, as we are told on this appeal, that Magee was an independent [sub]contractor, his claim still fails. Because he otherwise would enjoy no compensation protection, Miss. Code Ann. § 71-3-7(d) (1972), mandates that Singley shall be held liable for and shall secure payment of compensation.
We need not resolve the point. If on this record Singley and Fidelity and Guaranty were to deny coverage on grounds Magee was not an "employee" within Miss. Code Ann. § 71-3-3(b) (Supp. 1989), we would not give them the time of day. Facts do not yield differing legal conclusions turning on which party they displease. Magee's circumstances are not legally distinguishable from those of Turner Monts in Champion Cable Construction Co., Inc. v. Monts, 511 So.2d 924, 927-28 (Miss. 1987); or Paul A. Guthrie in Empire Home Builders v. Guthrie, 187 So.2d 17 (Miss. 1966). The judgment in favor of Singley is affirmed.
AFFIRMED.
*188 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The contract required that Singley produce workers' compensation insurance coverage for all employed on the project:

4.21 Insurance Requirements
CONTRACTOR shall carry, at its own expense, in reliable insurance companies satisfactory to COMPANY, the following types of insurance ...
4.21.1 Workers' Compensation
Workers' Compensation Insurance, written to cover the employees of CONTRACTOR in compliance with the state having jurisdiction over each employee, ...
[2] 4.5 Contract and Site Examination

CONTRACTOR represents that he has had an opportunity to examine the Contract and has fully acquainted himself with the general topography, soil structure, subsurface conditions, obstructions, the site of the Work and its surroundings; that he has made all investigations essential to a full understanding of the difficulties which may be encountered in performing the Work; that anything in any part of the Contract or any statements of information made or furnished by COMPANY or its representatives notwithstanding. CONTRACTOR will, regardless of any such conditions pertaining to the Work, the site of the Work or its surroundings, complete the Work for the compensations stated in the Proposal (except for changes in the Work which will be paid for pursuant to the provisions relating to supplemental agreements) and assume full and complete responsibility for any such conditions pertaining to the Work, the site of the Work or its surroundings and all risks in connection therewith. CONTRACTOR represents that he has authority to do business in the state or location in which the Work is to be performed and that he is fully qualified to do the Work in accordance with the Contract within the time specified.
[3] 4.15 Contractor's Responsibility for Work

CONTRACTOR shall be responsible for the care and maintenance of Work under construction and completed Work until COMPANY accepts the completed Work. COMPANY may at its option accept the Work in sections and relieve CONTRACTOR of further responsibility concerning the accepted portion. Before such acceptance, CONTRACTOR shall be required to remedy by repair or replacement, at its own expense, any damage to pipeline or backfill due to slides, washouts or to non-execution of the Work or from any other cause and shall do such reshaping of backfill and repairing of pipeline as may be necessary to place same in good condition except that which is specifically covered in the Specifications under "Cleanup".
[4] 4.23 Contractor Obligation and Indemnification

CONTRACTOR shall properly protect the property of COMPANY and others on and adjacent to the work site. CONTRACTOR shall take all necessary precautions for the safety of its employees and shall comply with all applicable provisions of federal, state and municipal safety laws to prevent accidents or injuries to persons or damage to property on, about or adjacent to the premises where the Work is being performed. CONTRACTOR assumes entire responsibility and liability and agrees to indemnify and hold harmless COMPANY and its representatives, ... .
[5] In several cases we have vis-a-vis third parties refused full respect to independent contract provisions that one party or the other has control or will bear all losses. E.g., Elder v. Sears Roebuck & Co., 516 So.2d 231, 232-33, 236 (Miss. 1987); Hardy v. Brantley, 471 So.2d 358, 372 (Miss. 1985). Those cases addressed the circumstance of members of the consuming public which by appearances had been induced to believe they were dealing with the party that in fact had attempted to delegate liability. A worker such as Magee is sufficiently an insider that cases such as Elder and Hardy are distinguishable and of little force. See also Fruchter v. Lynch Oil Co., 522 So.2d 195, 200-01 (Miss. 1988).