**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2009

Charles R. Fulbruge III
Clerk

No. 09-60354
Summary Calendar

MARK L MCLAURIN; TAWANA MCLAURIN,

Plaintiffs-Appellants

v.

NOBLE DRILLING US INC; NOBLE DRILLING CORPORATION; NOBLE
DRILLING SERVICES INC,

Defendants-Appellees

Appeal from the United States District Court for the
Southern District of Mississippi
USDC No. 1:05-CV-463

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Mark McLaurin filed suit for injuries sustained while working on a vessel owned by defendant Noble Drilling. The district court granted summary judgment in Noble's favor, finding that McLaurin had not raised any issue of material fact under Mississippi negligence law. On appeal, McLaurin contends that the district court improperly weighed the evidence. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008) (citation omitted). In determining whether a genuine issue as to any material fact exists, we examine the evidence in the light most favorable to the party opposing the motion. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348-49 (5th Cir. 2008).

Mark McLaurin was employed as a scaffold carpenter by Friede Goldman Offshore. In 2002, Friede Goldman assigned McLaurin to build scaffolding inside a pontoon extension on the "Noble Clyde Boudreaux," an offshore drilling rig owned by Noble Drilling. While McLaurin was working, a crane operated by a Friede Goldman employee was lowering a part of the roof structure on the pontoon. McLaurin placed his hand in a "pinch point" – a space between two objects – while the roof was being fitted. As a result, he sustained a severely crushed left hand and arm.

The relationship between Friede Goldman and Noble was contractual. Friede Goldman agreed to "furnish labor, material, and equipment required, on a Lump Sum Basis, to fabricate, paint and install lower hull pontoon extensions." Friede Goldman used its own equipment, conducted all operations in its own name, and directed its employees without Noble's instruction or interference. Noble did not assume responsibility for the safety of Friede Goldman employees under the terms of the contract.

The elements of a negligence claim in Mississippi are 1) duty, 2) breach of duty, 3) causation, and 4) injury. *Gulledge v. Shaw*, 880 So. 2d 288, 292-93 (Miss. 2004). Specifically relevant to this case is the definition of the duty owed by a premises owner to the employees of an independent contractor.

> Where a party . . . contracts with another . . . to perform original construction or repair work . . . and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liability for injuries experienced by

the contractor's workers where those injuries arose out of or were intimately connected with the work.

*Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 185 (Miss. 1989). The absence of contractual control would not foreclose liability. *Id*. If a plaintiff established that "the owner maintained *substantial de facto control* over those features of the work out of which the injury arose," even without a contract right, recovery may nonetheless be possible. *Id*. at 186 (emphasis added).

McLaurin attempted to establish Noble's control in both general and specific terms. McLaurin offered evidence that Friede Goldman and Noble created an extra-contractual joint safety protocol, that Noble had one of its employees on site, and that the Noble representatives routinely evaluated Friede Goldman's compliance with its overall plans. The district court concluded that this evidence spoke to Noble's control over the entire "Noble Clyde Boudreaux" project, not its control over the aspect of the work causing McLaurin's injury. The proof must explain control over the aspect of the work causing the injury. *Magee*, 551 So.2d at 185. None of the evidence offered by McLaurin supports that Noble controlled the work on the pontoon extension that caused his injury.

McLaurin also asserts that Noble representatives had a responsibility to intervene when they witnessed Freide Goldman employees working under a suspended overhead load. It is not altogether clear whether this specific argument was made to the district court, but we also do not find that Noble objects to the raising of a somewhat different appellate argument – if it is in fact different. So we consider it. Working under an overhead load, McLaurin contends, violated Noble's own safety procedures. However, there is no evidence that Noble employees were present when McLaurin's injuries occurred. Instead, McLaurin offers an expert willing to testify to a "moral certainty" that a Noble representative "would have been present" at the pontoon extensions to observe the safety violation. We do not find such testimony to create a fact issue that

anyone from Noble witnessed the incident and failed to intervene. In fact, McLaurin himself testified that no one from Noble told him how to perform his work, and that it was one of his Friede Goldman supervisors who told him to work inside the pontoon extension.

McLaurin relies on a precedent that affirmed recovery for an injured employee of a contractor when the premises owner retained "ultimate authority for safety" in the contract, issued step-by-step procedural instructions to the employees of the contractor, and paid the contractor a "day rate" for its work. *Coho Resources, Inc. v. McCarthy*, 829 So. 2d 1, 10-13 (Miss. 2002). The court specifically differentiated "day rate" jobs from "turnkey" contracts, which provide an independent contractor lump compensation for the entire job. *Id.* at 12.

By contrast, it is undisputed that in this case, Noble did not assume contractual authority for the safety of Friede Goldman employees. The evidence also shows that the details and procedures of Friede Goldman's day-to-day activities were controlled by its own rules and instructions. The agreement between Friede Goldman and Noble was a turnkey project, by which Friede Goldman took total control of its assignment until completion.

McLaurin argues that Noble should nevertheless be held liable for its failure to intervene. In *Coho,* the court acknowledged that an owner could be liable to employees of an independent contractor for its own negligence. *Id.* at 13. However, such negligence was established by evidence that the defendant did "retain and exercise substantial control" over the contractor's work, and "directly supervised" the relevant activity. *Id.* Further, testimony in *Coho* showed that the contractor's crew was required to follow the step-by-step instructions of the owner's on-site employee. *Id.* at 11.

The *Coho* facts do not exist here. Although there is evidence that Noble frequently had a company representative on site, there is no proof that he directed the aspect of the work causing the injury, nor that he was even present

at the accident. The court has made clear that the mere presence of the owner's employee, even where he periodically inspects the work, does not create liability. *Magee*, 551 So. 2d at 185. An owner's reasonable access to the operation is not enough. *Coho Resources, Inc. v. Chapman*, 913 So. 2d 899, 910 (Miss. 2005) (citing *Magee*, 551 So. 2d at 186-87).

McLaurin has not offered any credible evidence that Noble substantially controlled the aspect of the work causing his injury. There were, therefore, no disputes of material fact preventing summary judgment.

AFFIRMED.