GRIFFIS, P.J.,
for the Court:
¶ 1. This case considers whether the circuit court was in error to dismiss Glen Avent’s complaint against Entergy Mississippi, Inc. for failure to prosecute under *1200 Mississippi Rule of Civil Procedure 42(b), or to grant summary judgment in favor of Sheraton Tunica Corporation under Mississippi Rule of Civil Procedure 56. We find no error and affirm.
FACTS
¶ 2. Avent was employed by Andy Bland Construction Company. On July 3, 1994, Avent was working at a construction site in Tunica County, Mississippi. He operated a man-lift that became stuck in wet sand. There was an effort to free the lift and pull it out of the sand. The lift came into contact with an overhead electrical line. As a result, Avent was injured.
¶3. Sheraton owned the property that was the construction work site. Sheraton contracted with W.G. Yates and Son Construction Co., as the general contractor. Entergy had installed the electrical line. Andy Bland was a subcontractor of Yates.
¶ 4. On November 8, 1996, Avent filed a lawsuit. The complaint named several defendants, including Mississippi Power & Light (now known as Entergy Mississippi, Inc.) Yates, Sheraton, and several John Does. After the defendants were served, they responded to the complaint, and the parties engaged in discovery.
¶ 5. Sheraton filed a motion for summary judgment on May 21, 1997. Avent promptly responded to Sheraton’s motion.
¶ 6. The circuit court entered an “Agreed Scheduling Order” on April 18, 1997, requiring all discovery completed by August 30, 1997; plaintiff’s experts to be designated by June 15, 1997; defendant’s experts by July 30, 1997; and all motions filed by September 30, 1997. On August 28, 1997, the circuit court entered an “Agreed Amended Scheduling Order,” requiring all discovery completed by November 30, 1997; plaintiffs experts designated by August 30, 1997; defendant’s experts by September 30, 1997; and all motions filed by December 30, 1997. On November 13, 1997, the circuit court entered another “Agreed Amended Scheduling Order,” requiring all discovery completed by March 30, 1998; plaintiffs experts designated by December 30, 1997; defendant’s experts designated by January 30, 1998; and all motions filed by April 30, 1998.
¶ 7. Yates filed a motion for summary judgment on May 1, 1998. After the circuit court heard the summary-judgment motions, the court granted Sheraton’s motion, which was filed on May 21, 1997, and dismissed Sheraton as a party on October 6, 1998. A week later, the circuit court granted Yates’s motion for summary judgment and dismissed Yates as a party.
¶ 8. Several filings were entered on the docket from the time of the final judgment through August 10, 1999, when the clerk filed a letter from Entergy’s counsel that gave notice that the name of his law firm had changed. None of the filings were significant.
¶ 9. For almost six years, according to the clerk’s docket, this case was dormant.[1] The clerk’s docket sheet does not indicate that any further pleadings were filed or action taken until February 14, 2005, when the plaintiffs attorney filed a designation of experts.
¶ 10. Almost another year passed with no action on this case. On January 11, *1201 2006, Avent filed a supplemental response to Entergy’s interrogatories. After this, the docket indicates the parties’ filings as follows:
March 29, 2006: Avent mailed a letter to Entergy, investigating whether the case could be disposed of through mediation.
April 5,2006: Entergy responded by mail to Avent’s March letter.
April 10, 2006: Entergy sent a follow-up letter to Avent regarding mediation.
April 12,2006: Avent set mediation for May 30,2006.
April 12,2006: Entergy confirmed mediation dates, but questioned the value of mediation due to the length of time that the case had been dormant.
April 18,2006: Entergy filed a notice of service of its third set of interrogatories.
April 25, 2006: Entergy sent a letter to Avent cancelling mediation, requesting a new deposition, and expressing concern about the likelihood of finding crucial witnesses given the age of the case.
May 9,2006: Avent sent Entergy a letter with potential deposition dates.
June 6, 2006: Entergy filed its motion to dismiss based on want of prosecution; at the same time, Entergy filed an affidavit explaining its inability to locate witnesses.
February 9, 2009: Avent filed a motion for a pretrial conference.
February 10, 2009: Entergy filed a response to Avent’s pretrial-conference motion.
May 26, 2009: Entergy filed a supplemental motion to dismiss.
September 23, 2009: Avent sent Entergy a proposed pretrial statement.
February 18,2010: Entergy filed a notice of hearing on its motion to dismiss.
March 15, 2010: Entergy supplemented its motion to dismiss, detailing its inability to locate certain witnesses.
April 30, 2010: The circuit court dismissed Entergy from Avent’s lawsuit.
¶ 11. The circuit court held a hearing on Entergy’s motion to dismiss on April 20, 2010. At the conclusion of the hearing, the circuit judge ruled:
The question arises as to how long is too long? How much prejudice constitutes undue prejudice? In considering this matter, and [sic] I did give attention to it prior to my coming here today, there was a lot of inactivity during the middle age of this case. And then there was very nominal activity between 2006 and today.
If this case were to be continued, we still would not be complete. We still would not have completed the discovery in this case. If I would allow this case to continue, when would I ever be able to dismiss any other case? I know that each case stands on its own feet. But considering the length of delay, the reason for the delay, the facts having be *1202 come dim due to delay, witnesses who cannot be found, the increased cost of discovery, the time that it would take to replace experts and the numerous periods of inactivity, the Court finds that this case is imminently ripe for a dismissal. And if I would not dismiss this case, I would be remiss in the performance of my duties.
Therefore, the case is dismissed, finally dismissed.

I’m soiry, but I don’t see how I could ever dismiss a case in the future if I did not dismiss this case.

(Emphasis added).
¶ 12. On April 30, 2010, the circuit judge signed a final judgment granting Entergy’s motion to dismiss. It is from this judgment that Avent now appeals.
ANALYSIS

A. The Dismissal of Claims Against Entergy

¶ 13. Rule 41(b) of the Mississippi Rules of Civil Procedure states:
For failure of the plaintiff to prosecute ..., a defendant may move for dismissal of an action or of any claim against him.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ..., operates as an adjudication upon the merits.
M.R.C.P. 41(b). The circuit court relied on Rule 41(b) to dismiss Avent’s claims against Entergy for failure to prosecute. We find that the circuit court was within its discretion, and the dismissal was proper.
¶ 14. Recently, in Barry v. Reeves, 47 So.3d 689, 692-93 (¶¶ 8-9) (Miss.2010), the Mississippi Supreme Court addressed the dismissal of a plaintiffs case for failure to prosecute, stating:
The courts of this state have the inherent power to dismiss a case for want of prosecution, and a trial court may dismiss a case on that basis for the sake of expediting justice and controlling its own docket. However, given the severity and finality of this sanction, which strips a litigant of his opportunity to pursue his cause of action, dismissal for failure to prosecute pursuant to Mississippi Rule of Civil Procedure 41(b) is “reserved for the most egregious cases.” A ruling dismissing the case with prejudice on this basis “will be affirmed only if there is a showing of a clear record of delay or contumacious conduct by the plaintiff, and where lesser sanctions would not serve the best interest of justice.” “Cases ‘in which dismissals with prejudice have been affirmed on appeal illustrate that such a sanction is reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors.’ ”
When examining a trial court’s dismissal of a case for want of prosecution, [an appellate court] will affirm the trial court’s findings of fact, unless the findings are manifestly wrong. “[An appellate court] will not disturb a trial court’s ruling on a dismissal for want of prosecution unless it finds an abuse of discretion.”
(Internal citations and footnote omitted).
¶ 15. Charles Barry filed suit against John Reeves in 2001 for alleged malpractice that Barry claimed had occurred in 1996. Id. at 693 (¶ 10). In 2007, Reeves filed a motion to dismiss for want of prosecution, which the Hinds County Circuit Court granted. Id. The circuit court found that Barry had failed to prosecute his case from 2004 to 2007 and dismissed the case. Id. The supreme court reversed the circuit court’s judgment and noted that “the record reveals that both parties actively par *1203 ticipated in the discovery process by requesting, producing, and supplementing discovery until at least April 30, 2002.” Id. at (¶ 11). As to the period between 2004 and 2007, the supreme court noted that Barry had filed motions for settings and hearings and sent letters to opposing counsel during those years. Id. The supreme court found the trial judge’s factual findings were not supported by the record. Id. The supreme court noted that the trial court was manifestly wrong because it had omitted the actions of the plaintiff, Barry, during the relevant time period. Id. The supreme court ruled:
However, the mere fact that delay occurs in the prosecution of a case is not sufficient to warrant dismissal for want of prosecution. It must be clear from the record that the delay was the result of the plaintiffs failure to prosecute the claim, rather than extrinsic factors beyond the control of the plaintiff. See M.R.C.P. 41(b).
In the case at hand, it is far from clear that the delay in the prosecution of this case is attributable to Barry. Indeed, each period of inactivity was interrupted by a positive action by Barry to expedite the litigation. Specifically, after the receivership had ended, Barry filed the motion to lift the stay. After the next ten-month period of inactivity, Barry filed a motion to set trial, which has not been ruled on by the trial court. The next one-year period of inactivity came to an end when Barry sent a letter to the trial court, requesting a status conference and a trial date, and another period ended by Barry’s filing his motion for a status conference and a trial date. Finally, the last period of inactivity was terminated when Barry sent a letter to the Administrative Office of the Courts pursuant to Rule 15(a) of the Mississippi Rules of Appellate Procedure.
What is clear from the record is that significant, protracted delays in the prosecution of this case were beyond Barry’s control, including the near twenty-month delay attributable to [American National Lawyers Insurance Recip-rócalas receivership, the seventeen-month delay caused by defense counsel’s failure to respond to Barry’s letters, and the trial court’s failure to rule on Barry’s motion for a status conference. Accordingly, it cannot be said that there is a clear record establishing that Barry delayed the case’s prosecution.
Barry, 47 So.Sd at 694 (¶¶ 14-16).
¶ 16. The facts here are not similar to the facts of Barry. Instead, Avent was injured in an accident that occurred on July'2, 1994. Avent filed his lawsuit on November 8, 1996. The last “agreed” scheduling order required experts to be designated by January 30, 1998, and discovery to end by March 30, 1998. No significant action was taken from 1999 until 2006. Then, after Entergy’s motion to dismiss was filed on June 6, 2006, another three years lapsed before Avent filed a motion for a pretrial conference on February 9, 2009. Very little occurred from then until the circuit court dismissed En-tergy as a party on April 30, 2010, almost sixteen years after the accident.
¶ 17. Entergy’s motion to dismiss was not based solely on the passage of time. Entergy provided credible evidence that its ability to defend Avent’s claims had been prejudiced by the delay. Entergy claimed that available witnesses’ memories had faded over time. Entergy established that a significant number of witnesses were no longer available. Entergy offered affidavits of two legal assistants who testified about their unsuccessful efforts to locate the individuals identified in Avent’s May 15, 2006, discovery answers. One of the legal assistants testified she attempted *1204 to contact the individuals identified by Avent as having discoverable knowledge, and she was unable to contact eight of the nine witnesses identified.
¶ 18. To make matters worse, even though Avent responded to Entergy’s motion to dismiss on June 18, 2006, Avent took no further action to move this case to judgment for another two years. The circuit judge recognized this case was a clear example of an inexcusable delay by the plaintiff that had prejudiced the defendant’s efforts to defend the claims asserted. Avent offered no good cause for the delay. The circuit judge acknowledged Entergy’s problem with locating witnesses, fading witnesses’ memories, increased litigation costs, and the burden to the court system. The circuit judge did, in fact, consider the “clear record of delay ... by the plaintiff’ and determined “lesser sanctions would not serve the best interest of justice.” Barry, 47 So.3d at 692 (¶ 8). The circuit judge’s reasoning also indicated that he found this was an “egregious” case. Id.
¶ 19. We find no error in the circuit court’s judgment granting Entergy’s motion to dismiss. The facts here are distinguishable from Barry. Here, the “significant, protracted delays in the prosecution of this case were” not beyond Avent’s control. The circuit court considered the delay, the cause of the delay, and determined Entergy had been significantly prejudiced by the delay. The circuit court was within its discretion, and the dismissal was proper under Mississippi Rule of Civil Procedure 41(b). This issue lacks merit.

B. Summary Judgment in Favor of Sheraton

¶20. Avent also claims that the summary judgment was improperly granted as to Sheraton.[2] We review summary judgment under a de novo standard of review. Clark Sand Co. v. Kelly, 60 So.3d 149, 154 (¶ 12) (Miss.2011). “Summary judgment is proper ‘if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ” Id. at 154 (¶ 13) (quoting M.R.C.P. 56(c)).
¶ 21. Although Sheraton owned the construction site, where it was in the process of constructing a casino, it was not the general contractor on the site. According to the terms of Sheraton’s construction contract with Yates, Yates was “responsible for initiating, maintaining!!,] and supervising all safety precautions and programs in connection with the performance of the [c]ontract.” The same provision further stated that Sheraton was “not ... responsible in any way for providing a safe place for the performance of the [w]ork by [Yates], any [subcontractor or [s]ub-sub-contractor, or any of their respective agents or employees.” A separate provision further stated that Yates was required to “take reasonable precautions for [the] safety of, and shall provide reasonable protection to prevent damage, injury[,] or loss to ... employees on the [w]ork and other persons who may be affected thereby....” The contract also stated that Yates was responsible for pro *1205 viding all of the materials and equipment that were to be used on the site.
¶ 22. Toby Arnheim, Sheraton’s project manager responsible for the site, provided an affidavit that was considered by the circuit court. In it, Arnheim stated that he and Carl Bosworth, Sheraton’s facilities director, were the only Sheraton employees who were ever at the site. Arnheim stated that he was there simply to “ensure that the work complied with the [contract [documents.” Bosworth also supplied an affidavit; he stated that he was not responsible for any of the work that was performed outside the building. Bosworth further stated that no Sheraton employee was responsible for the safety procedures in place at the site. Mike Sesko, who worked for Yates in July 1994, provided an affidavit which confirmed that Yates had complete control over the site and that Sheraton had nothing to do with the installation of the power line in question or the general safety conditions on the site.
¶23. Avent acknowledges the above, but claims that Mississippi law prohibits an entity from delegating its duty to provide a safe work environment. However, this argument is undermined by numerous cases. In Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 183 (Miss. 1989), Transcontinental Gas Pipe Line Corporation (Transco) contracted with Singley Construction Company to connect a well to existing gas pipelines for Transco. As here, Transco’s contract with Singley explicitly made Singley responsible for the conditions on the site. Id. at 184-85. James Magee sued Transco and Singley after he was injured while working on the lines. Id. at 183. The Hinds County Circuit Court granted summary judgment on behalf of Transco, and Magee appealed. Id. at 184. Our supreme court found summary judgment was appropriate and affirmed the circuit court’s judgment; in so doing, the supreme court stated the following:
Where a party such as Transco contracts with another such as Singley to perform original construction or repair work and devolves upon the contractor the right and fact of control of the premises and the nature and details of the work, the owner has no liability for injuries experienced by the contractor’s workers where those injuries arose out of or were intimately connected with the work. Arising in varying factual settings, our authorities to this general effect are quite clear. The fact that Transco had employees that conducted periodic inspections on the work could change nothing.
Id. at 185-86 (emphasis added) (internal citations omitted). The Transco court recognized that an injured worker could recover against an owner like Transco if the owner “maintained substantial de facto control over those features of the work out of which the injury arose....” Id. at 186.
¶ 24. Like Transco, Sheraton contracted its responsibility for the site condition to Yates, its general contractor. Therefore, Sheraton has no liability for any injuries that Avent suffered as a result of the conditions on the construction site. We see no way to distinguish this case from Transco. There is nothing in the record to suggest that Sheraton maintained any sort of control over the power line from which Avent’s injuries arose. Accordingly, summary judgment was properly granted on Sheraton’s behalf, and this contention of error is without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., *1206 CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RUSSELL, J. LEE, C.J., AND MYERS, J., NOT PARTICIPATING.

. We note that the clerk’s docket does not include the clerk’s notice to the parties that the case may be dismissed for want of prosecution. M.R.C.P. 41(d). Rule 41(d)(2) is mandatory, and it requires the clerk to mail such notice twice a year. Under Rule 41(d), the clerk should have mailed the proper notices that the case was subject to dismissal for want of prosecution. It does not appear the clerk followed this Rule. The clerk’s omission has no affect on the outcome of this appeal. Nevertheless, we remind both clerks and trial judges that Rule 41(d)(2) is mandatory and the notice should be noted on the docket.

. Sheraton is not included as a party to this appeal due to its failure to make an appearance in this case. We note that Avent served Sheraton's counsel at counsel’s 1998 address, at which counsel may no longer do business. However, neither Sheraton nor its counsel have provided an updated address to the circuit clerk during the intervening years. Consequently, Sheraton has neither appeared nor filed a brief in this case.