# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01554-COA

**JUDITH PEEBLES, INDIVIDUALLY AND AS NEXT FRIEND AND REPRESENTATIVE OF MARK PITALO**

APPELLANT

**v.**

**FRED BURNS, AS THE EXECUTOR OF THE ESTATE OF KEVIN LEE BURNS, DECEASED**

APPELLEE

DATE OF JUDGMENT:                          09/26/2018
TRIAL JUDGE:                               HON. ROBERT P. KREBS
COURT FROM WHICH APPEALED:                 JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:                   RUSSELL S. GILL
                                           JOSEPH RICHARD TRAMUTA
ATTORNEY FOR APPELLEE:                     WILLIAM BRIAN ATCHISON
NATURE OF THE CASE:                        CIVIL - PROPERTY DAMAGE
DISPOSITION:                               REVERSED AND REMANDED - 05/12/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This case is about water runoff between two adjoining real properties. Because we find genuine issues of material fact remain in this case, we reverse the Jackson County Circuit Court's judgment and remand the case to the Jackson County County Court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     In December 1971, Mark Pitalo purchased a residential property in Ocean Springs, Mississippi. Judith Pitalo Peebles, Pitalo's daughter, moved in with her father in 1984. The

next year (in July 1985), Kevin Lee Burns purchased the adjoining property. He resided there as Pitalo and Peebles's next-door neighbor until Kevin's death in September 2015.

¶3. In June 2015, or three months before Kevin's death, Peebles noticed "a large puddle" in her front yard. Several days later, a plumber named Marshall Desrosiers informed Peebles that there was a break in Kevin's underground water line. The next month, Peebles began noticing structural and foundational damage to her home, such as cracks and stress fractures. Structural Solutions LLC, a structural engineering company, inspected her property and determined the damage was caused by "pressure build-up" from water flow. Structural Solutions thereafter worked to remove the water from underneath Peebles's home, installed a "sump pump," and started to re-level the home's foundation.[1]

¶4. On February 16, 2016, Pitalo[2] and Peebles filed suit in the Jackson County County Court against Fred Burns ("Burns") in his capacity as the executor of Kevin's estate, "Builder X," and "ABC Defendants," seeking an injunction under Mississippi Rule of Civil Procedure 65; alleging two counts of negligence,[3] one count of private nuisance, one count of trespass; and requesting a declaratory judgment. According to the complaint, a water line located

---

[1] Peebles alleged her costs to date for Structural Solutions's repairs were "approximately $10,500.00." She also asserted that she needed to install a drainage system with an estimated cost of $8,000.00.

[2] Upon an agreed order of substitution dated January 13, 2017, the pleadings were amended to remove Pitalo as a plaintiff in his individual capacity and to name Peebles as the individual plaintiff and as a next friend of Pitalo.

[3] The first negligence count alleged Kevin had diverted water from his land to Pitalo and Peebles's land. The second negligence count was alleged against the unknown "Builder X." Although Pitalo and Peebles asserted negligence against "Builder X," no other parties were joined in the action.

2

underneath Kevin's driveway "broke" in late May or early June 2015. Pitalo and Peebles argued that "thousands of gallons of water" leaked for thirteen days from Kevin's broken water line and onto their property. They also asserted that the excessive water runoff caused damage to the foundation of their property, other structural damage to their home, "sinkholes," and cracks and splits in the their driveway and sidewalk. Burns answered on April 11, 2016. Discovery then proceeded for one year.

¶5.     On April 10, 2017, Burns moved for summary judgment under Mississippi Rule of Civil Procedure 56 and argued, among other things, that (1) Kevin did not own or possess title to the property during 1981, or at the time the driveway, driveway extension, patio, and garage were built on the property; (2) Pitalo and Peebles's water-runoff claim was barred by the statute of limitations under Mississippi Code Annotated section 15-1-49 (Rev. 2012); (3) Pitalo and Peebles were unable to provide sufficient evidence that Kevin committed a breach of duty or proximately caused injury to Peebles; (4) Pitalo and Peebles were unable to satisfy the requisite elements of private nuisance; and (5) the water runoff did not constitute a trespass. In support of his argument, Burns attached sixteen exhibits.[4]

---

[4] The exhibits included: (1) the complaint; (2) the answer; (3) Kevin's death certificate; (4) Kevin's warranty deed and reservation of life estate; (5) Fred M. Burns (Kevin's father) and Naomi Burns's 1977 deed; (6) Pitalo's 1971 deed of trust; (7) a photograph of the Burns driveway, dated October 1981; (8) a photograph of the Burns garage, dated March 1981; (9) photo copies of checks issued by Fred M. Burns for garage work; (10) photographs of the slope in the Burns driveway; (11) a "Plumb Clean Drain" receipt; (12) Peebles's answers to interrogatories; (13) a document from the City of Ocean Springs; (14) Charles "Chuck" Burkhard's affidavit; (15) a topographic survey conducted by Timothy L. Glass; and (16) a warranty deed issued from Pitalo to Peebles, dated October 20, 2015.

¶6.     Peebles[5] responded in opposition on May 1, 2017. In her memorandum, Peebles contended, among other things, that genuine issues of material fact existed as to (1) the date she or Pitalo discovered or reasonably could have discovered the injury; (2) whether Kevin negligently maintained[6] his water lines, specifically whether Kevin had knowledge concerning the condition of his water line or knowledge of the alleged "forty-seven thousand (47,000) gallons of water . . . released onto [her] property"; and (3) whether Kevin constructed the concrete driveway extension in 2007. In support, Peebles attached a personal affidavit and seven other exhibits.[7]

¶7.     On May 5, 2017, Burns filed a motion to strike Peebles's affidavit, arguing the affidavit contained "self-serving[,] conclusory statements" and that it was unreliable. Peebles responded to Burns's motion to strike on May 15, 2017, and filed a supplemental response to Burns's motion for summary judgment. Following the supplemental response, Burns filed a reply and attached additional exhibits.[8]

---

[5] We use "Peebles" to refer to Peebles as an individual plaintiff and as a next friend of Pitalo per the January 13, 2017 agreed order. *See supra* note 2.

[6] Pitalo and Peebles's complaint did not assert a negligent-maintenance claim. The claim was raised in Peebles's response to Burns's motion for summary judgment.

[7] The exhibits included: (1) Peebles's affidavit; (2) an independent consulting engineer's report; (3) a report from Structural Solutions; (4) Douglas Saucier's affidavit; (5) a City of Ocean Springs water-meter reading; (6) four photographs of the water line; (7) Rondell Young's inspection report and curriculum vitae; and (8) a Structural Solutions agreement and invoice.

[8] Those exhibits, among others, included: (1) Burns's affidavit; (2) Peebles's expert designation of Tim Anderson; (3) Marshall Desrosiers's deposition transcript; and (4) a City of Ocean Springs work order.

¶8.    The county court held a hearing on Burns's motion for summary judgment and motion to strike Peebles's affidavit on June 9, 2017.  At the hearing, Burns argued that Fred M. and Namoi Burns owned the property during the time the driveway, driveway extension, office, and garage were built.  Burns used photographs[9] to demonstrate that the disputed construction began in 1978 and was completed by 1981.  Burns also presented Marshall Desrosiers's deposition transcript to the court.  The transcript explained that Desrosiers was called by Kevin's neighbor to fix a water leak on Kevin's property in June 2015.  When he arrived, he noticed that Kevin was ill and wheelchair-bound.  Desrosiers fixed three rusted holes in Kevin's water line and stated that he saw no previous repairs made to the pipe. Desrosiers also stated that he saw water running from the pipe to the street, and not onto Peebles's property.

¶9.    In response, Peebles argued that Kevin constructed the driveway extension that connected his driveway to the detached garage in 2007.  In support of her argument, Peebles referenced her affidavit that was attached to her summary judgment response.  In addition, Peebles argued that the same water line leaked in 2011, or four years prior to the 2015 leak. In regard to her trespass and nuisance claims, Peebles asserted that Kevin diverted surface water onto her property.  At the end of the hearing, the parties disputed Burns's motion to strike Peebles's affidavit.[10]

---

[9] The court accepted the exhibits solely for summary judgment purposes.  The exhibits were not admitted into evidence.

[10] The record is devoid of an order granting or denying Burns's motion to strike Peebles's affidavit.

5

¶10. Three weeks later, the county court granted Burns's motion for summary judgment, finding that Peebles had presented no evidence that Kevin owned the property at the time of the construction. Peebles then moved to alter or amend the judgment under Mississippi Rule of Civil Procedure 59. The county court held a hearing on that motion, but it was denied. On August 11, 2017, Peebles moved to amend the pleadings under Mississippi Rule of Civil Procedure 15(b), arguing that her negligent-maintenance claim was properly before the court "by implied consent." On August 16, 2017, the county court entered an ex parte order also denying that motion.

¶11. On September 15, 2017, Peebles filed an appeal to the circuit court, arguing that the county court erred by (1) granting Burns's motion for summary judgment; (2) denying her motion to alter or amend the judgment; and (3) denying her motion to amend the pleadings. The circuit court affirmed. Peebles then filed the instant appeal.

**STANDARD OF REVIEW**

¶12. We review a trial court's decision granting or denying summary judgment de novo. *Robinson v. Holmes County*, 284 So. 3d 730, 732 (¶7) (Miss. 2019). "Summary judgment is proper only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Owen v. Pringle*, 621 So. 2d 668, 670 (Miss. 1993). And to determine whether there is a genuine issue of material fact, we will review "all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non-movant[,]" in this case, Peebles. *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 395 (¶22) (Miss. 2018) (internal quotation marks

6

omitted); *see also* M.R.C.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

## DISCUSSION

¶13. The only caselaw cited by either the county court or the circuit court pertaining to the motion for summary judgment is *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182 (Miss. 1989). The circuit court approvingly cited to *Magee* for the proposition that an affidavit or otherwise (i.e., a deposition or answers to interrogatories) generates a genuine issue of material fact if it is (1) sworn; (2) based upon personal knowledge; and (3) shows that the party giving the evidence is competent to testify. *Id.* at 186. Furthermore, the circuit court reiterated the county court's finding that "there was no evidence presented . . . placing [Kevin] in possession of the real property at the time of the construction at issue and that there [was] no genuine issue as to any material fact in this cause and [Burns was] entitled to judgment as a matter of law."

¶14. In *Magee*, Transcontinental Gas Pipe Line Corporation contracted with Singley Construction Company to construct 8.6 miles of underground pipeline in Jefferson Davis, Lamar, and Marion counties. *Id.* at 183. James Magee began work for Singley on the Transcontinental pipeline but was injured on the job. *Id.* After the injury, Magee filed suit claiming that both Singley and Transcontinental were "guilty of negligence." *Id.* Before trial, however, the trial court granted summary judgment to both defendants. *Id.* at 184. On

7

appeal, our supreme court affirmed, finding that Magee could not create a genuine issue of material fact and defeat summary judgment by relying soley on unsworn answers to Transcontinental's interrogatories. *Id.* at 187. "Because [Transcontinental] placed sufficient sworn facts [, i.e., affidavits,] before the [trial court] to rebut [Magee's] allegations of direct negligence[,] and[] in response, [Magee] chose to rest upon the allegations contained in her pleadings, the [trial court] did not err in finding that there were no genuine issues of material fact precluding summary judgment." *Id.*

¶15.    We find *Magee* easily distinguishable from the present case.   In *Magee*, our supreme court found Magee's answers to interrogatories deficient because the answers were "signed by counsel," "not based on personal knowledge," and did not prove any information rebutting Transcontinental's claims. *Id.* Unlike *Magee*, Peebles signed her supporting affidavit, based it on personal knowledge, and rebutted Burns's claims that the driveway extension was built prior to 1981.

¶16.    It is undisputed that Kevin obtained ownership of the property in July 1985.  It also seems to be undisputed that the driveway, detached garage, and office (or "Florida room") were built by 1981.  However, we find credible and conflicting evidence disputing the date the driveway extension was built.

¶17.    To argue that the driveway extension was built by 1981, Burns relies on a $4,600.00 check, two photographs, and his individual affidavit.  The record shows that the first photograph is time stamped March 1981.  It depicts Burns's detached garage.  The second photograph is dated seven month later, or October 1981.  It shows the Burns driveway, which

8

runs adjacent to the house. Yet, the photographs fail to show the disputed driveway extension that connects the driveway to the detached garage. At the summary judgment hearing, it appears the county court shared the same observation. The transcript provides:

THE COURT: So [the driveway extension] should've been built in [19]78, so the [picture] in [19]81 should've shown that, shouldn't it? If they built it and paid for it in 1978, a photograph in 1981 should have shown a paved area in front of [the detached garage].

[Burns]: If we were in the backyard taking the shot, yes, sir. The person who took the shot is standing at the driveway.

THE COURT: I'm not going to argue with you about it because I'm just telling you, in your photograph . . . taken in 1981 looking at the garage –

[Burns]: You cannot see around the back of the house. I will admit that.

THE COURT: No, you can see in front of the garage –

[Burns]: Yes.

THE COURT: – and there is no pavement there.

[Burns]: Not directly in front of the garage. But there is a patio off to the east.

THE COURT: Well, at some point it was paved up to the garage; was it not?

[Burns]: Yes, sir.

THE COURT: When?

[Burns]: In [19]81.

. . . .

9

| | |
|---|---|
| THE COURT: | Was there another addition . . . [,] I don't understand [what] we're talking about here? |
| [Burns]: | Yes, sir. |
| THE COURT: | Okay. |
| [Burns]: | There was an office, Florida room[,] that opposing counsel was discussing – discussing, and the [driveway extension]. [The check] really reads, "Building [driveway extension], and office." |
| THE COURT: | Well, isn't that a fact to be decided by somebody other than me? |

¶18.    In addition to the check and photographs, Burns also points to his individual affidavit. In his affidavit, he states that the disputed driveway extension was built by his parents, who previously owned the home.

¶19.    In opposition, Peebles relies on her affidavit. Peebles's affidavit provides in part:

> In 2007, [Kevin] had a [driveway extension] constructed in his back yard, running along the back of his house, extending to the west edge of his property, and running south to connect to his detached garage.
>
> [Kevin's driveway extension] comes up to the edge of my property line, sloping downward and directing his surface water into my yard. Every time it rains, all of the water on his patio runs right into my back yard and floods it.
>
> After the [driveway extension] was constructed, my yard gradually started to retain water where it would have drained before, and depressions slowly started to form in my back yard that weren't there before. I did not notice these changes taking place at the time, but the changes really started to stand out after [Kevin's] water line broke and flooded my property in 2015.
>
> Early in the summer of 2011, water began to pond in my yard at the front east corner of my house. My son-in-law, who has experience as a contractor, came out to my house to determine where the water was coming from, but he could not find a leak in any of my pipes. A week or two after my son-in-law came out to the house to investigate my flooding, [Kevin] discovered that his water

10

line was leaking under his driveway. A plumber came out, jackhammered up a section of his driveway, did some work on [Kevin's] water line near the front east corner of my house, and patched the driveway. After the repair, the ponding in my yard disappeared.

. . . .

In the early part of June, 2015, my neighbor Joe Jackson informed me that my yard was flooding at the front east corner of my house, again. I came outside and saw that my yard was flooded. I learned that [Kevin] had another break in his water line, which was pouring water into my yard and under my house.

. . . .

After Mr. Desrosiers [, a plumber,] fixed [Kevin's] broken water line, my father and I went over and spoke with [Kevin] about the water on our property. When I asked [Kevin] if he had seen the water coming out of the ground before and why he didn't fix the broken pipe sooner, he said that he had seen the water, but "thought it was rain." When I asked him [] if he would please file a liability claim with his homeowner[']s insurance provider, he told me that he did not have homeowner's insurance, and that once the water left his property, it was no longer his problem.

¶20. After careful review of the record, and based on the evidence before us, we find that a genuine issue of material fact remains as to whether Kevin owned the subject property at the time the driveway extension was built. "Where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits. Where the record is incomplete regarding any material fact, the summary judgment motion should generally be denied." *Ellis v. Powe*, 645 So. 2d 947, 950 (Miss. 1994).

¶21. We also find a genuine issue of material fact exists as to the excess water on Peebles's property. Burns argues Peebles's property was not damaged by the water released from the break in Kevin's water line. To support his argument, Burns relies on Charles Burkhard's

11

affidavit, Marshall Desrosiers's deposition, and a "Topographic and Boundary Survey" performed by Timothy Glass. Both the affidavit and deposition transcript contain testimony supporting Burns's claim that the water runoff traversed down Kevin's driveway and into the street, rather than onto Peebles's property. The survey suggests the same.

¶22. In opposition, however, Peebles presents records from the City of Ocean Springs showing that an excess of 40,000 gallons of water leaked from Kevin's underground water line. What is more, Peebles attached a report, agreement, and invoice from Structural Solutions that discussed at length the excess water trapped underneath her home. Thus, we find that Peebles presented sufficient evidence that creates a genuine issue of material fact and "upon which a fair-minded jury could return a favorable verdict." *See Lott v. Purvis*, 2 So. 3d 789, 792 (¶11) (Miss. Ct. App. 2009) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)).

¶23. Because we find there is a genuine issue of material fact as to whether Kevin owned his property at the time the driveway extension was built, and because there is conflicting evidence regarding the excess water on Peebles's property, we cannot say this case was ripe for summary judgment. *Harmon v. Regions Bank*, 961 So. 2d 693, 697 (¶10) (Miss. 2007) ("If any triable issues of material fact exist, the trial court's decision to grant summary judgment will be reversed."). Finally, we also note that all of Peebles's other claims—nuisance, trespass, and negligent maintenance—were not reached by the summary judgment. Therefore, we have neither law nor facts to make a determination on any of these

other claims.[11]  Therefore, we reverse and remand this case for further proceedings for findings consistent with this opinion.[12]

## CONCLUSION

¶24.  "Summary judgment lies only when there is no genuine issue of material fact" and is not a substitute for the trial of genuinely disputed issues of material fact.  *Wertz v. Ingalls Shipbuilding Inc.*, 790 So. 2d 841, 845-46 (¶11) (Miss. Ct. App. 2000).  As genuine issues of material fact exist in this case, we hold that the circuit court erred by affirming the county court's decision to grant Burns's motion for summary judgment.  This judgment is reversed and remanded to the county court for further proceedings.  *Johnson v. Goodson*, 267 So. 3d 774, 779 n.6 (Miss. 2019).

¶25.  **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.  J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

---

[11] We note that Peebles's motion to amend the pleadings under Mississippi Rule of Civil Procedure 15(b) was untimely filed subsequent to final judgment.  *Harmon*, 961 So. 2d at 701 (¶29) (citing *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1219 (¶48) (Miss. 2001)).

[12] Because we reverse the court's granting of summary judgment and remand the case for further proceedings, any arguments regarding the denial of Peebles's motion to amend the judgment are now considered moot.